WESTRAY v. UNITED STATES.

1. Under the "act to increase duties on imports," &c., passed June 30th, 1864, the collector is under no obligation to give notice to the importer of his liquidation of duties on merchandise imported. The importer who makes the entries is under obligation himself, if he wishes to appeal from it, to take notice of the collector's settlement of them.
2. The right of the importer to complain or appeal begins with the date of the liquidation whenever that is made.

3. The ordinary warehouse bond, in the form prescribed by the regulations of the Secretary of the Treasury, in which the condition provides in the alternative, that the penalty may be avoided by the payment, within one year, of a sum of money fixed, or by the payment of whatever duties may be ascertained to be due whenever the goods should become subject to duty by withdrawal for consumption, is hardly an ordinary pecuniary bond, but is rather a bond given to secure the payment of whatever duties may be by law chargeable on the merchandise to which it refers.   At all events, if the obligor pay but part of the sum of money fixed as above said, and the whole of the sum thus fixed, proves, on liquidation of the duties for which the bond was given, to be less than the sum with which the goods are rightly chargeable, he cannot come in after the expiration of the year, and when, at law, a forfeiture has occurred, and tender payment of the difference (with interest) between the sum named in the bond and the amount which he has actually paid. He can be relieved from the forfeiture only upon doing complete equity, and that, in such a case, is nothing less than payment of all the duties to secure which he gave the bond.

ERROR to the Circuit Court for the Southern District of New York; the case being thus:

"An act to increase duties on imports," &c., passed June 30th, 1864,* enacts:

"SECTION 14. That on the entry of any merchandise, the decision of the collector of the customs at the port of importation and entry, as to the rate and amount of duties to be paid on such merchandise, shall be final and conclusive against all persons interested therein, unless the owner, importer, consignee, or agent of the merchandise shall, within ten days after the ascertainment and liquidation of the duties by the proper officer of the customs, as well in cases of merchandise entered in bond as for consumption, give notice in writing to the collector on each entry, if dissatisfied with his decision, setting forth therein, distinctly and specifically, the grounds of his objection thereto, and shall, within thirty days after the date of such ascertainment and liquidation, appeal therefrom to the Secretary of the Treasury, whose decision on such appeal shall be final and conclusive.   And such merchandise shall be liable to duty accordingly, unless suit shall be brought within ninety days after the decision of the Secretary of the Treasury on such appeal, for

---

* 13 Stat. at Large, 214

any duties which shall have been paid before the date of such decision on such merchandise, or within ninety days after the payment of duties paid after the decision of the secretary."

This act being in force, Westray & Co. imported into New York a cargo of rice; the duty on which article, when in the form commercially known and designated as "uncleaned," is two cents per pound, and when in the form commercially known and designated as "cleaned" is two and a half cents per pound. The rice was entered for warehouse in October, 1864, and the usual warehouse bond given on that day by the importer. The bond was in $25,049.90, and was conditioned that the importer should,

"On or before the expiration of one year, to be computed from the date of importation, . . . pay . . . unto the collector of the customs, &c., the sum of $12,524.95, OR the amount of duties *to be ascertained* under the laws now existing, or hereafter to be enacted, to be due and owing, &c., OR shall in the mode prescribed by law, on or before the expiration of three years from date of said importation, withdraw said goods from the bonded store or public warehouse where they may be deposited, . . . and actually export the same beyond the limits of the United States, OR shall within three years . . . transport said merchandise in bond to any port of the Pacific or western coast of the United States."

Westray & Co. within a year after giving the bond withdrew the rice for consumption, and paid thereon two cents per pound as upon "uncleaned rice;"

| | |
|---|---|
| Thus paying, as it turned out, the sum of . . | $12,352 15 |
| Or less by . . . . . . . . | 172 80 |
| Than the sum conditioned named in the bond, . | $12,524 95 |

The rice was afterwards appraised as "cleaned rice," and on entry the collector liquidated the same as such, and the dutiable rate thereof at two and a half cents per pound. The additional half cent, thus charged, made a difference of $2111.17 between the sum which had been paid and that with which the rice as cleaned rice was now chargeable.

It did not appear that the collector had at any time given

notice to Westray & Co., the importers, of the liquidation, nor did the importers within ten days after the ascertainment and liquidation give any notice of their dissatisfaction, nor make any appeal to the Secretary of the Treasury.

In this state of things the United States brought suit on the bond, alleging as breach that though the time of one year mentioned in it had expired, Westray & Co. had not within the said year paid the $12,524.95 OR the amount, when ascertained, of the duties imposed by laws then existing, &c.    Plea, *nil debet.*

On the trial the defendants offered in evidence samples of the rice, and offered to prove that it was in fact and as commercially designated "uncleaned rice," and, therefore, liable to pay no more duty than two cents per pound, which the government admitted had been paid within one year from date of importation, and that by the said payment of two cents per pound the bond became void.

The government objected to this evidence on the ground that by the act of Congress, above quoted, the decision of the collector was final and conclusive as to the rate and amount of duties, no notice of dissatisfaction with such decision having been given to him within ten days after the liquidation, and no appeal therefrom having been made to the Secretary of the Treasury.

The court sustained the objection, and held that the defendants could give no evidence respecting the character of the rice or its commercial designation in trade, or the rate of duty chargeable thereon.    The defendants excepted.

The defendants then requested the court to rule that, there being no evidence that notice of the aforesaid liquidation by the collector was at any time given to them, or that they ever had knowledge of such liquidation, the time within which to serve notice of dissatisfaction upon the collector, and to appeal from his decision to the Secretary of the Treasury, if required by law, as ruled by the court, did not run till notice of liquidation was given to defendants, or till they had knowledge of the same.

The court refused thus to rule, on the ground that the collector was not bound to give any notice of his liquidation to the defendants, nor to bring his decision to the defendants knowledge, and that the time within which to give notice of dissatisfaction as aforesaid, and appeal, must run from the date of such liquidation, whenever made. To which decision the defendants excepted.

The defendants then requested the court to admit the evidence offered by them as to the commercial designation of the rice, on the grounds that the collector had given no notice of liquidation as aforesaid, and that, therefore, they were not debarred by the limitations of the statute from giving such notice of dissatisfaction and appeal, as required by the ruling of the court.

The court refused to admit the evidence, on the ground that, having ruled that no notice of liquidation from the collector to the defendants was required, the defendants were barred, and the evidence inadmissible. To which decision the defendants excepted.

The defendants then requested the court to instruct the jury that it was a condition of the bond that the same should be cancelled upon the payment of $12,524.95, within one year from date of importation, and as it was admitted that $12,352.15 had been paid within one year, that the jury could lawfully find no greater amount of damage than the difference between these two amounts, and interest on this difference.

The court refused to so instruct the jury. To which decision the defendants excepted.

The court then directed the jury to bring in a verdict for the plaintiffs for $2111.77, gold, with interest, to which direction of the court the defendants excepted.

Verdict and judgment having gone for the United States, the defendants brought the case here.

*Mr. Ethan Allen, for the plaintiffs in error:*

The liquidation of the duties, and the decision of the col-

lector is a secret proceeding, so far as the merchant is concerned. No date is fixed when the act shall be done. The appraiser notes his classification of the merchandise on the invoice when his convenience permits, and his clerk extends in figures on the entry the amount of the duty according to this classification; and this constitutes the decision of the collector, of which, according to the ruling of the court below, no notice whatever need be given to the importer, although from the moment this decision is made, the ten days limitations begin to run within which the importer must protest and appeal. As this statute takes away the common-law right of the citizen to defend himself, as in this case, against an alleged illegal exaction, it is a severe statute, and should be interpreted liberally. Indeed the treasury department, by regulations adopted in 1869, directs notice to be given to the merchant of the time when the decision of the collector is made, by ordering collectors to "keep a daily record of the entries liquidated," &c., and to "give notice of the liquidation of such entries by posting a transcript of such record in some conspicuous place in the custom-house, &c., for ten days." As these regulations, however, were issued in 1869, and as the bond upon which this suit is brought was made in 1864, these regulations do not cover this case. They show, however, that the treasury recognizes it as a duty to give notice to the merchant of the decision of the collector. Before this regulation was made, it was the custom for the collector to send a special notice to the importer, informing him of any decision made. This notice, however, was not given to the importers in this case, as was admitted on the trial.

2. In an action on a bond, of many separate conditions—like the one in suit—the performance of either one of which cancels the bond, the maker of the bond is entitled to choose which condition he will fulfil in satisfaction of it.

In part fulfilment of the first condition, it was admitted on the trial that $12,352.15 had been paid within one year. The only breach, then, on the part of the importers, was in not paying the balance of $172.80 within the year. Had

this balance been paid within the year, clearly the importers could have demanded cancellation of the bond.

The condition of an obligation is considered as the language of the obligee, and so is construed in favor of the obligor, and shall always be taken most favorably for the obligor. The law never overcomes by implication the express provisions of parties. Nor will equity enforce the penalty, the party being ready and desirous fully to perform any one of several alternate conditions.

*Mr. G. H. Williams, Attorney-General, and Mr. S. F. Phillips, Solicitor-General, contra.*

Mr. Justice STRONG delivered the opinion of the court.

The acts of Congress which regulate the collection of duties upon imported articles are imperative that, on the entry of any goods, wares, or merchandise, the decision of the collector of customs, at the port of importation and entry, as to the rate and amount of duties to be paid on such goods, wares, and merchandise, and the dutiable costs and charges thereon, shall be final and conclusive against all persons interested therein, unless the owner, importer, consignee, or agent of the merchandise shall, within ten days after the ascertainment and liquidation of the duties by the proper officers of the customs, as well in cases of merchandise entered in bond as for consumption, give notice in writing to the collector on each entry, if dissatisfied with his decision, setting forth therein distinctly and specifically the grounds of his objection thereto, and shall, within thirty days after the date of such ascertainment and liquidation, appeal therefrom to the Secretary of the Treasury.*

This act expressly applies to liquidations made when imported articles are entered for warehousing, and to those made when they are entered for consumption. In neither case is there any provision for notice of the decisions or liquidations, and for the obvious reason that such a provision

---

* Act of June 30th, 1864, § 14, 13 Stat. at Large, 214.

would be superfluous. The importer is instructed by the law at what time the collector or officers of the customs must liquidate the duties. The statute, and the treasury regulations established under it, require that the duties must be ascertained whenever an entry is made, whether it be for warehousing or for withdrawal. In practice, it is true, the liquidation at the time of entry for warehousing is little more than an approximate estimate, and it is mainly for the purpose of determining the amount of the bond to be given. It is made, and the bond is given, before the goods are sent to the warehouse, or even to the appraisers' stores, and before they are weighed, gauged, or measured. But the importer enters them and gives the bond, the amount of which is regulated by the estimated amount of duties. It is due to his inattention, therefore, if, he does not know what that estimate is at the time when it is made. Equally true is it that he has ample means of knowledge of the second or corrected liquidation—that made at the time of the withdrawal entry. One of the conditions of his bond is that he pay the amount of duties *to be ascertained* under the laws then existing or thereafter enacted. He is· thus informed that there is to be another liquidation, and that the law requires it to be made at the time when he ᴜ 'all make his withdrawal entry and when the duties are required to be paid. There is, then, no reason for requiring a notice to be given to him of the collector's decision. But, if this were not so, it is certain that the statute requires none; and it is not for us to rule that what Congress has declared, to be conclusive shall not be so, unless something has been done more than the lawmakers required. It follows that the Circuit Court was not in error when it refused to receive evidence to show that the rice which the officers of the customs had decided was "cleaned rice," and subject to duty as such, was "uncleaned," and therefore subject to less duty. No notice of dissatisfaction with the duty assessed, or with the liquidation made, was given to the collector within the period defined by the statute; no appeal was made to the Secretary of the Treasury, and the decision of the collector was, therefore,

by the express declaration of the act of Congress, final and conclusive upon the plaintiffs and upon all persons interested.

The same considerations lead to the conclusion that the Circuit Court correctly refused to rule that the ten days prescribed by the statute, within which notice of dissatisfaction is required to be given, did not begin to run until notice of the collector's liquidation was given to the plaintiffs in error, or until they had knowledge thereof. The limitation of the right to complain or to appeal commences with the date of the liquidation, whenever that is made. No notice is required, but the importer who makes the entries is under obligation to take notice of the collector's settlement of the amount of duties. The claim of the government upon the goods is in the nature of a proceeding *in rem*, of every step in which the claimant, owner, or importer is presumed to have notice, and since, as we have remarked, the liquidation of the duties is required by the law to be made when the entries are made, the presumption is not unreasonable.* This disposes of the first four assignments of error.

The bond upon which the suit was brought was for the penal sum of $25,049.90, and its conditions were that it should be void if the obligors, or either of them, should, within one year, pay unto the collector of the customs the sum of $12,524.95 (half the penalty), *or* the amount of duties to be ascertained under the laws then existing, or thereafter to be enacted, due and owing on the imported goods described, *or* should, in the mode prescribed by law, on or before the expiration of three years from the date of importation, withdraw the goods from the bonded warehouse where they might be deposited, and actually export them, *or* within three years should, under the regulations of the Secretary of the Treasury, transport them to the Pacific coast. It was an ordinary warehouse bond, in the form prescribed by the regulations of the Treasury Department.† Its purpose was to secure the payment of the duties which might be owing upon the goods, when they should be withdrawn from the

---

* See Treasury Regulations, 1857, ch. 3, §§ 2, 3.          † Regulations, p. 221.

warehouse for consumption, should they be so withdrawn. It was impossible to ascertain at the time when it was given what the amount of duties would be when the goods might be withdrawn.   The defeasance was, therefore, in the alternative that the penalty might be avoided by payment of a sum mentioned within one year, or by the payment of whatever duties might be ascertained to be due and owing, that is, ascertained to be due and owing whenever the goods should become subject to duty by withdrawal for consumption.   It was not, therefore, an ordinary pecuniary bond. Hence, when the defendants requested the Circuit Court to instruct the jury that it having been admitted $12,352.15 had been paid within one year, no verdict could be returned for any greater sum than the difference between the amount paid and $12,524.95 (the sum mentioned in the defeasance), with interest thereon, we think it was not error to refuse the instruction.   At law the penalty was forfeited by the non-performance of any one of the conditions.   The defendants' claim to relief was in equity alone, and though in the case of an ordinary pecuniary bond, with a simple pecuniary penalty, compliance with the condition to pay at a specified day is allowed even in a court of law to be compensated for by the payment of the sum mentioned in the condition, with interest thereon, the rule may well be otherwise in the case of such a bond as this.   If it be admitted that the obligors might have selected the condition with which they would comply before a legal forfeiture had been commenced, it must still be held that, considering the nature of the bond and the purpose for which it was given, such an option was not theirs after they had come into default.   They can be relieved from the forfeiture only upon their doing complete equity, and that is nothing less than the payment of all the duties, to secure which they gave the bond.

It follows that the jury were properly directed to return a verdict for the plaintiffs for the amount of duties unpaid, as ascertained and liquidated by the collector, with interest thereon.

JUDGMENT AFFIRMED.