## UNITED STATES v. CAMPBELL.

*(District Court, S. D. New York.   March 6, 1882.)*

1. CUSTOMS REVENUE — SURETY ON WAREHOUSE BONDS — LIABILITY — SETTLE-
MENTS AFTER ONE YEAR CONCLUSIVE.

   Where the surety in a warehouse bond in 1872 became bound for the with-
drawal of the goods within three years, upon payment of the duties " to which
they shall *then be subject*," and the goods were accordingly withdrawn within
that time and the duties paid in full as then liquidated, but upon discovery of
an error, seven years afterwards, a reliquidation was made showing a deficiency
of $400, for which the surety was thereupon sued on the bond, *held*, that the
surety was not liable.

2. SAME — LIQUIDATION BY COLLECTOR FINAL AND CONCLUSIVE.

   It is the legal duty of the collector, not of the surety, to ascertain and liqui-
date the duties.   Such liquidation is " final and conclusive" upon all persons
interested, unless appealed from, and determines the amount of the legal duties
to which goods are " then subject."   Withdrawal and payment according to
the liquidation existing at the time is a fulfilment of the terms of the bond for
the time being, and the surety cannot be held except upon the bond.

3. IMPORTER — LIABILITY OF.

   The importer is liable irrespective of the bond, and, as against him, a
reliquidation, prior to the act of 1874, might have been made at any time after-
wards.

4. SURETY — CONTINUANCE OF RISK.

   The necessary continuance of a surety's risk upon such a bond does not ex-
ceed the three years named in it, or the additional period until sale of the goods
not withdrawn as provided by law.   A reliquidation of duties after the lapse of
this period is not legal as against him, because it would in effect raise up a new
obligation, and involve a continuance of his risk after the expiration of the
utmost limit contemplated in his contract, and would, therefore, involve an
alteration of his contract in an essential particular.

5. SAME — CONTRACT CONSTRUED — EFFECT OF LIQUIDATION.

   The surety's contract being only for the payment of duties upon withdrawal,
*semble* liquidation by the government is by the terms of the bond a condition
precedent to the payment and withdrawal, and, in the absence of fraud, reliq-
uidation should not be enforced against the surety after a delivery and pay-
ment of duties as once liquidated.

6. STATUTE LIMITING TIME FOR LIQUIDATION CONSTRUED.

   Section 21 of the act of June 22, 1874, (1 Rev. St. 81,) is designed to apply to
past liquidations ; and a reliquidation, in the absence of fraud, cannot be made
more than one year after settlement, according to a prior liquidation.

7. SAME — ON PRIOR PAYMENTS — STATUTE, WHEN BEGINS TO RUN.

   The payment in this case having been made before the passage of the act,
the one year named in it commences to run from the time the act took effect.

*S. L. Woodford*, U. S. Atty., and *Wm. C. Wallace*, for plaintiff.
*Hartley & Coleman*, for defendant.

BROWN, D. J. The defendant is sued as a surety upon a warehouse bond, executed August 19, 1872, by F. W. Wagner, upon the importation of three cases of optical instruments. The bond recited the importation of the goods by Wagner, the principal, and the entry of the goods for warehousing under the laws of the United States; and the condition was, among other things, "that if, within one year from the date of said original importation, the said goods, wares, and merchandise shall be regularly and lawfully withdrawn from public store or bonded warehouse, on payment of the legal duties and charges to which they shall then be subject, or within three years, on payment of duties and charges, with 10 per cent. additional, etc., then the above obligation to be void." The duties were liquidated at $310.20 on September 30, 1872. The goods were entered for withdrawal in three portions,—a part on September 10, a part on September 17, and the residue on September 28, 1872. Upon the first two withdrawals before liquidation duties were paid in excess of the whole amount as afterwards liquidated, so that on the last withdrawal no duties appeared to be due, and the residue of the goods was delivered on the basis of that liquidation without any further payment, the withdrawal entry being marked "overpaid."

On March 8, 1880, more than seven years afterwards, an error of nearly $400 was discovered in the liquidation of September 30, 1872. A "reliquidation" was, therefore, made, and this suit is now brought against the surety only, to recover upon his bond the deficiency as ascertained according to the reliquidation of 1880.

The defendant claims that his obligation was discharged by the payment of the duty in full, as liquidated, within the period prescribed by the bond, and by the regular withdrawal and delivery of the goods upon the faith of that liquidation; and also that under the act of June 22, 1874, (1 Supp. to Rev. St. p. 81, § 21,) no reliquidation of this entry could be made more than one year after the passage of that act.

The error in the liquidation of 1872 was of such a nature as to have been easily discovered upon a scrutiny of the entry and of the computation made upon it. But it does not appear that the surety in the bond, who is alone sued in this action, had anything to do with the liquidation, or that he is chargeable with any knowledge of the error, or of the nature or cause of it. As regards him, therefore, the case must be determined upon the general authority of the collector to make a reliquidation which shall be binding upon a surety after the

goods have been once regularly withdrawn and the duties paid as liquidated at the time of withdrawal, and after the lapse of the period of three years specified on the bond for payment.

The question here presented could not arise as regards the importer himself, for he is liable for any deficiency in payment of the lawful duties, irrespective of the withdrawal of the goods, and, prior to the act of 1874, reliquidation as against him might be had at any subsequent time, and suit brought against him for the deficiency. *U. S.* v. *Phelps,* 17 Blatchf. 312, 316; *Dumont* v. *U. S.* 98 U. S. 142, 144; *U. S.* v. *Cousinery,* 7 Ben. 251; *Westray* v. *U. S.* 18 Wall. 322.

The situation of the surety is different. His liability is limited to the conditions of the bond itself. *U. S.* v. *Dumont,* 98 U. S. 142; *Miller* v. *Stewart,* 9 Wheat. 681; *U. S.* v. *Boecker,* 21 Wall. 652u. These conditions are that the bond should be "void" if in one year the goods should be regularly and lawfully withdrawn upon payment of the duties and charges to which they shall *then be subject,* or if they should be so withdrawn within three years, on payment of such duties and charges, and 10 per cent. additional." These goods were regularly and lawfully withdrawn within one year, *i. e.,* in the usual and customary manner, upon payment of the duties as liquidated at that time.

The "legal duties" to which the goods were "then subject" were, in legal contemplation, the duties as then liquidated and fixed by the collector. He and those under him are the persons charged by law with the duty of making the necessary examination of the goods, and of determining "the rate and the amount of duties." By the act of June 30, 1864, under which this entry was made, it is declared that "the decision of the collector as to the rate and *amount* of duties shall be final and conclusive against all persons interested therein, unless the owner appeal, etc., within 10 days after the ascertainment and liquidation of the duties by the proper officers," and that "such goods shall be *liable to duty accordingly,* any act of congress notwithstanding," etc. 13 St. at Large, c. 171 p. 214, § 14.

In the case of *U. S.* v. *Cousinery,* 7 Ben. 255, which was approved by the chief justice in *Watt* v. *U. S.* 15 Blatchf. 33, *Blatchford,* C. J., says, in reference to this clause of the statute: "This means that the decision (*i. e.,* of the collector, if there be no appeal, or of the secretary, if there be an appeal) is made the test and standard of the payment of the duties to the government, even if there be an act of congress which seems to prescribe something different from the decision." Page 257. And in the same case he also says: "The amount fixed by

the collector is by the statute made the duty for the purpose of collecting it as a duty."

In *Lawrence* v. *Caswell*, 13 How. 488, *Taney*, C. J., says, in reference to an excessive liquidation: "Where no protest is made, the duties (*i. e.*, the excessive duties) are not illegally exacted in the legal sense of the term, but paid in obedience to the decision of the tribunal to which the law has confided the power of deciding the question." To the same effect is *Nichols* v. *U. S.* 7 Wall. 122, 127.

In any suit brought by the United States upon this bond, and upon the very clause now in question, to recover the amount of duty as ascertained by the original liquidation, that liquidation would be final and conclusive, and no further inquiry permitted into the rate or amount of duty. *U. S.* v. *Cousinery*, 7 Ben. 251; *Watt* v. *U. S.* 15 Blatchf. 33; *Westray* v. *U. S.* 18 Wall. 322; *U. S.* v. *Phelps*, 17 Blatchf. 317. The statute, in declaring that "the goods shall be liable to duty *accordingly*," *i. e.*, according to the liquidation then made, "any act of congress notwithstanding," makes the *liquidation* the measure of the amount of the "legal duties," and payment in accordance with this liquidation is a payment of the "legal duties to which the goods are *then subject*," and is, for the time being at least, a perfect performance of the condition of the bond, and consequently a discharge of the surety.

But it is claimed that a subsequent liquidation vacates the former liquidation, and determines the true amount of "legal duties" to which the goods were originally subject, and that, consequently, under the new liquidation, the condition of the bond is not fulfilled. This claim, if valid, would create against the surety a liability for his principal long after the period of the surety's risk contemplated by the bond had expired, when the security in the hands of the government was gone, and when the lapse of time might have produced great changes in the surety's means of indemnity against his principal. Such a reliquidation, made after the delivery of the goods and after the expiration of the three years prescribed by the bond, cannot, in my judgment, be enforced against the surety, because it would in effect prolong his risk indefinitely, and postpone his means of resort to his principal for indemnity beyond the period stipulated in the bond, and would be, therefore, in its legal effect, an alteration of the contract in an essential particular, viz., as respects the duration of his risk.

It is a well-settled condition of the obligation of a surety that the creditor shall do no act whereby the *risk* of the surety would be in-

creased beyond that which he has expressly assumed by his contract. If the creditor do so, the surety is thereby discharged. A postponement of the time of payment discharges a surety, because otherwise it would continue the surety's risk beyond the stipulated period; it prevents him from paying the debt at the time agreed on, and from proceeding at once for his indemnity against his principal, or against any other securities held for the debt. These general principles of the law of suretyship, and the rule that a surety's obligation is limited to his contract *strictissimi juris*, apply to contracts with the United States the same as to those with individuals. *Miller* v. *Stewart*, 9 Wheat. 681, 703; *U. S.* v. *Hodge*, 6 How. 279, 283; *U. S.* v. *Hillegas*, 3 Wash. C. C. 70; *U. S.* v. *Tillotson*, 1 Paine, C. C. 305; *U. S.* v. *Bostwick*, 94 U. S. 53, 66.

By the terms of this bond the defendant had the right, as surety, to determine his risk by payment of the "legal duties" at the end of three years, or so soon as any deficiency should be ascertained under the provisions of law for the sale by government of any goods still on hand, and immediately thereafter to proceed for indemnity against his principal. That was the extreme limit of time during which the surety's right to proceed for his indemnity against his principal could, under this contract, be suspended. That was the utmost duration of his risk to which, by his contract, he had assented. To uphold a claim against the surety based upon a reliquidation made after seven years would be postponing his right to proceed against his principal for indemnity, and extending the period of his risk to that length of time, instead of three years only, as provided by the bond, with the additional period necessary for a sale of any goods not withdrawn. *U. S.* v. *De Visser*, 10 FED. REP. 642.

The government cannot increase or prolong this risk indirectly through a reliquidation long after the prescribed period of credit has passed, any more than it could do so directly by an express extension of the time of payment. The result of both is the same. The liquidation of the duties was an essential condition precedent to their final payment. The obligation to liquidate and fix the amount of duties devolved by law upon the collector. The surety is not legally chargeable with any duty in that respect. It is neither any part of his contract, nor devolved on him by law; and the liquidation, when made by the officers charged with the duty of making it, was "final and conclusive" upon him, and he had no power to change it. Until reliquidation the surety could not have paid any increased duties, and then have recovered the amount so paid in any action against his

principal. The original liquidation, which was "conclusive upon all persons in interest," would have precluded him from any such recovery. Nor can the surety be charged with any fault in not procuring an earlier reliquidation, or a correction of an error of which he is not shown to have had any knowledge. As the liquidation must precede payment of the duties, the bond itself imports an obligation upon the government to make this liquidation before the expiration of the three years' term of credit to the importer, which is the utmost limit of the surety's stipulated risk; and, if reliquidation is not made within that period, it cannot be asserted afterwards against the surety, because incompatible with the legal limitation of his risk which the bond itself imports.

Again, the terms of the bond, which provide that the goods shall be "withdrawn *upon* payment of the duties," necessarily import that the withdrawal and the payment are to be concurrent acts. The obligation of the government to make the liquidation before withdrawal is, therefore, as much a part of the contract as the obligation of the bondsmen to pay the duties upon withdrawal; the former is a necessary condition of the latter. The provision for payment "upon withdrawal" also enures directly to the benefit and to the safety of the surety, and the liquidation having been made, and the goods delivered over in regular course upon payment of the amount so liquidated, the government would seem to be estopped from any subsequent reliquidation to the prejudice of the surety. Such would manifestly be the result as between individuals; and in its express contracts with its citizens the United States, it is said by the chief justice in *Bostwick* v. *U. S.* 94 U. S. 53, 66, "are controlled by the same laws that govern the citizen in that behalf. All obligation which would be implied against citizens in the same circumstances will be implied against them." *McKnight* v. *U. S.* 98 U. S. 179, 186; *U. S.* v. *Barker,* 12 Wheat. 558; *Cooke* v. *U. S.* 91 U. S. 396.

However this may be, it seems to me clear that the right to reliquidate is not an absolute right. It is not conferred by any statutory authority. It is a privilege which has been sustained by the courts as against the importer, who is liable, irrespective of the bond, for whatever duties ought to have been fixed and paid by him. The surety is liable upon the bond only. The right to reliquidate cannot be asserted, as against him, contrary to the implied terms of the bond; and any reliquidation by the government must, therefore, be made within the limited period of his risk as stipulated in the contract.

*Second.* The claim of the United States would also seem to be barred by the limitation prescribed by the act of June 22, 1874. Section 21 of that act (1 Supp. Rev. St. 81) shows, by its language, that it was designed to apply to past liquidations. It declares "that whenever any goods, etc., *shall have been* entered, etc., and whenever any duties upon any imported goods, etc., *shall have been liquidated* and paid, etc., such settlement of duties shall, after the expiration of one year from the time of entry, in the absence of fraud, etc., be final and conclusive on all parties."

At the time of the passage of this act the government had, under former decisions, been allowed to reliquidate the duties against the importer, without any limitation of time. Such reliquidation was a necessary preliminary to any remedy for deficiency under a preceding erroneous liquidation. This section of the act of 1874 is, therefore, in the nature of a statute of limitations. It applies to the government, and limits its remedies, after settlement, to a period within one year from the date of entry. *U. S.* v. *Phelps,* 17 Blatchf. 312, 316. Such statutes, where the prohibitory language is general, as in this case, apply to past as well as future transactions, unless the contrary intent is manifest. *Sohn* v. *Waterson,* 17 Wall. 596. The intent of section 21 of this act to include past transactions seems clear from the words above quoted. But inasmuch as "one year from the date of entry" had already elapsed at the time the act was passed, the rule of construction, as sustained in the case last cited, must be that the time of limitation shall "commence when the cause of action is first subjected to the operation of the statute." Upon this construction the government had but one year after the act of June 22, 1874, took effect, in which to make its reliquidation and commence suit.

It is urged that section 26 of that act declares that "nothing herein contained shall affect existing rights of the United States." But it is impossible to hold, as it seems to me, that the effect of this saving clause is to nullify every specific clause in the act, when a right of the United States is affected. The act relates to several different subjects, and many of its provisions modify, more or less, rights formerly existing. Section 16 expressly applies to suits "now pending," and the existing rights of the United States in such suits were greatly affected thereby through a submission to the jury of the question of actual intent to defraud. "Acts and parts of acts inconsistent with the provisions of this act are repealed;" and then comes the saving clause as to "existing rights." The general words of this

clause must be held to be subordinate to the specific provisions of particular sections, which show a manifest intent to apply to past transactions. The purpose of that clause was, I think, simply to prevent any existing right of the United States from being wholly cut off, or affected otherwise than expressly provided. Under the construction above adopted, as in *Sohn* v. *Waterson*, 17 Wall. 596, any existing right to reliquidate the duties would not be cut off; it would remain unaffected for the full period of one year thereafter, but no longer; and that, I think, is all that the act designed.

The defendant is, therefore, entitled to judgment.

See *Barney* v. *Watson*, 92 U. S. 449; *Ullman* v. *Murphy*, 11 Blatchf. 354; Refund of Customs Duties, 15 Op. Atty. Gen. 121.