## UNITED STATES *v.* COBB and others.

*(Circuit Court, D. Massachusetts.    April 3, 1882.)*

1. CUSTOMS DUTIES—RIGHT OF THE GOVERNMENT.

   The right of the government to the duties is not limited to the lien on the goods, or to the bond given for their payment. The revenue act makes the duties a personal debt or charge upon the importer, which accrues to the government immediately upon the arrival of the goods at the proper port of entry. They are due, although the goods, for any reason, had never come into the hands of the customs officers, or the statute proceedings had never been instituted, or through accident, mistake, or fraud no duties or short duties have been paid, and the importer is not discharged from his debt by the delivery to him of the goods without payment.

2. CLASSIFICATION UNDER "SIMILITUDE CLAUSE"—RULINGS OF SECRETARY OF THE TREASURY.

   Where the secretary of the treasury instructed the collector of the customs to continue to classify jute rejections as jute butts, under the provisions of the Revised Statutes, § 2499, known as the "similitude clause," after jute butts had ceased to be dutiable and could no longer be a standard of comparison under that clause, and the collector delivered the jute rejections free of duty under said similitude clause; and the secretary of the treasury, having subsequently discovered his error, in a second instruction to the collector directed him to collect the prescribed duty on the jute rejections,—*held*, that the secretary had an undoubted right to change his first erroneous ruling.

3. BOND OF IMPORTER—CONSTRUCTION OF.

   The bond given by the importers, in which they expressly stipulate to pay the amount which might be found due upon the final liquidation of the entry over and above the amount of the estimated duties already paid, is a distinct notice to them that a further adjustment of the duties on the entry was to be made, and that they might be called upon for a further payment.

On Motion for New Trial.

*Prentiss Cummings,* for plaintiff.

*Moorfield Storey,* for defendants.

Before LOWELL and NELSON, JJ.

NELSON, D. J.    This is an action to recover the duties on 619 bales of jute rejections imported by the defendants at New York in August, 1872.    At the trial the court directed a verdict for the plaintiff, and the defendants now move for a new trial on the ground that this direction should not have been given.

Considered in the most favorable light for the defendants, the evidence proved the following facts:

For several years prior to August 1, 1872, jute butts had been subject to a duty of six dollars a ton; and under the instructions of the secretary of the treasury jute rejections had been classified and made dutiable as jute butts, under the provision of section 20 of the act of August 30, 1842, (5 St. 565;

Rev. St. § 2499,) known as the "similitude clause," which provides that non-enumerated articles shall pay duty at the same rate as the enumerated *dutiable* article which they most nearly resemble. On the first of August, 1872, the act of June 6, 1872, went into force, by which jute butts were placed on the free list. The effect of this act was to change the classification of jute rejections, since jute butts, having thereby ceased to be dutiable, could no longer be a standard of comparison under the "similitude clause." But the secretary of the treasury, not at once observing the distinction, on the thirty-first of July, in response to an inquiry by an importer of jute, instructed the collector of customs at New York to continue to classify jute rejections as jute butts, and thus in effect decided them to be free of duty. On the tenth of August the defendants imported a quantity of merchandise from Calcutta, all included in a single invoice, among which were 1,000 bales of jute and 619 bales of jute rejections, and on the same day entered the same for consumption. All the goods, except the jute, were entered free, and the jute was entered as dutiable at $15 a ton. The entry was passed as correct by the entry clerk; the jute rejections were passed as free, and the duty on the jute was estimated at $15 a ton. The defendants paid the estimated duties and received a permit to land the goods, and also gave the usual bond required of the importer on delivery to him of packages not designated for examination. The bond was conditioned, among other things, to pay whatever excess of duties should be found to be due upon the final liquidation of the entry, on all the merchandise included in the entry over and above the amount previously estimated and paid. All the jute rejections were delivered to the defendants by the officers of customs on or before August 16th, and on that day were sold by the defendants at a price fixed upon the basis of the secretary's decision of July 31st. None of the jute rejections, or any samples of them, were ever sent to the appraisers' stores, or examined by the appraisers, or sent to the weighers, or weighed; and none of the packages were ever designated on the invoice for examination. On the fourteenth of August the secretary of the treasury, having discovered his previous error, addressed to the collector a letter countermanding his instructions of July 31st, and directing him to collect a duty of $15 a ton on jute rejections, as similar to unmanufactured jute, but adding that "the question, if importers are dissatisfied, can hereafter be properly passed upon by the department on a case duly presented by protest and appeal." Under these instructions the customs officers liquidated the duties on the jute rejections at $15 a ton, and ascertained the amount due from the importers to be $1,239.43. This liquidation was finally completed and notice thereof given to the importers, as required by the fifty-ninth article of the customs regulations, on September 14th, and within 10 days thereafter the defendants protested, but did not appeal to the secretary of the treasury. Appeals were, however, taken in other cases, upon which the secretary sustained the importers, and decided that jute rejections were liable to a duty of 10 per cent. *ad valorem*, as a non-enumerated article under section 24 of the act of March 2, 1861, (12 St. 196,) and to an additional duty of five dollars a ton, as a non-enumerated vegetable substance, under section 11 of the act of July 14, 1862, (12 St. 554.) See *Wills* v. *Russell*, 100 U. S. 621. By a letter of the secretary, dated October 18th, the collector was notified of this decis-

ion, and directed to cause his practice to conform thereto, and to adjust unliquidated entries at that rate.

After the receipt of this letter the collector directed a reliquidation of the duties on the jute rejections to conform to the new instructions of the secretary, and accordingly the liquidating clerk, on February 18, 1873, drew his pen across the liquidation of September 14th, and made on the entry a new calculation of duties, whereby the balance due from the importers was fixed at $709.80. The entry, with this new calculation upon it, was sent to the naval office, and there approved, and was thence returned to the collector's office; but the chief clerk did not affix the final stamp by which the date of the liquidation is determined and the liquidation made complete, but held the entry without acting on it, awaiting instructions from the secretary of the treasury in regard to the case. The stamp containing the date of the liquidation was never affixed, and no notice of a second liquidation was ever given to the importer.

The court, at the plaintiff's request, but against the objection of the defendants, directed the jury to return a verdict for the plaintiff for $965.32, which was the amount due as duties on the jute rejections under the last decision of the secretary of the treasury, calculated upon the invoice weight and value, and interest thereon from the date of the writ.

It was not denied by the defendants that this was the proper rate at which jute rejections were dutiable, but they insisted that for other reasons the government could not recover in this action.

The first objection was that the passage of the goods as free at the date of the entry was a decision of the collector, equivalent to a final liquidation of the duties in the case of dutiable goods, that the goods were free of duty, and that this decision was binding on the government. But this is manifestly not so. It took place before the goods were landed, and before it was possible that they could be examined and classified by the appraisers, and was only the usual preliminary estimate of the duties made to ascertain the amount which must first be paid or secured before the importer receives a permit to land the goods. This is also shown clearly by the bond given by the defendants, in which they expressly stipulate to pay the amount which might be found due upon the final liquidation of the entry, over and above the amount of the estimated duties already paid.

The second objection is that since there was no designation of sample packages on the invoice, and no regular examination and classification of the goods by appraisers; and since the liquidation of September 14th was vacated and no second liquidation perfected,—the plaintiff has failed to prove such an ascertainment and liquidation of the duties as the statute requires, and is, therefore, not entitled to recover. It certainly might admit of some question whether the reduction of the first liquidation from $1,239.43 to $709.80 had the

effect to vacate the first liquidation, except for the difference between the two sums. If it did not, the defendants are bound by it absolutely, notwithstanding the irregularities in the previous proceedings, since he failed to follow up his protest by an appeal to the secretary. Act of June 30, 1864, (13 St. 214; Rev. St. § 2931;) *Westray* v. *U. S.* 18 Wall. 322; *Arthur* v. *Unkart,* 96 U. S. 118; *U. S.* v. *Cousinery,* 7 Ben. 251; *Watt* v. *U. S.* 15 Blatchf. 33; *U. S.* v. *Phelps,* 17 Blatchf. 312; *Chase* v. *U. S.* 9 FED. REP. 882. But, without considering this point further, there is another ground which is decisive of the case. The summary proceedings which the customs officers are required by law to take against the goods are in the nature of proceedings *in rem,* but are not the sole remedies of the government for the collection of its duties. It is well settled that the right of the government to the duties is not limited to the lien on the goods, or to the bond given for their payment. The act makes the duties a personal debt or charge upon the importer, which accrues to the government immediately upon the arrival of the goods at the proper port of entry. They are due, although the goods have been smuggled, or for any reason have never come to the hands of the customs officers, or the statute proceedings have never been instituted, or through accident or mistake or fraud no duties or short duties have been paid, and the importer is not discharged from his debt by the delivery to him of the goods without payment. *Meredith* v. *U. S.* 13 Pet. 486; *U. S.* v. *Lyman,* 1 Mas. 482; *U. S.* v. *Phelps, ubi supra.* In *U. S.* v. *Phelps* it is said by Judge Blatchford that "it is well settled that the duties due upon all goods imported constitute a personal debt due to the United States from the importer; that the consignee is, for this purpose, treated as the owner and importer; that such debt is independent of any lien on the goods and of any bond given for duties; and that the right of the government to the duties accrues when the goods have arrived at the proper port of entry."

The same rule has been held to apply to the internal revenue acts.

In *Dollar Savings Bank* v. *U. S.* 19 Wall. 227, it was decided by the supreme court, under the act of June 30, 1864, that a tax on the undistributed sums added during the year to the surplus funds of a savings bank could be collected by the government in an action of debt against the bank, although the assessment of the tax by the revenue officers provided for in the act had never been made, and although the time for making the assessment had expired; the court holding that the statute itself was a sufficient assessment to create the debt.

In *U. S.* v. *Hazard,* decided by Judges Clifford and Knowles in this circuit, (22 Int. Rev. Rec. 309,) it was held, under the act of March 2, 1867, that the government was not concluded by the assessment of an income tax by the revenue officers, and that after its assessment and payment the government could maintain an action for the difference between the tax assessed and the tax which should have been assessed upon the defendant.

These principles apply to and must govern the present case. It appears that the jute rejections were liable to a duty of 10 per cent. *ad valorem,* and to an additional duty of five dollars a ton, and that these duties have never been paid. The plaintiff is clearly entitled to recover them in this suit.

The transaction seems to have been unfortunate for the defendants, but the case can hardly be called one of legal hardship. The secretary had an undoubted right to change his first erroneous ruling. The bond given by the defendants was a distinct notice to them that a further adjustment of the duties on the entry was to be made, and that they might be called upon for a further payment. The goods were delivered up to them under a clear mistake.

If the action of the collector or his subordinates resulted in vacating the original liquidation, it certainly did not work to the prejudice of the defendants, since it restored them to all the rights which they had lost by their failure to appeal to the secretary. At all events the defendants' misfortune is not one for which the courts can afford relief.

Motion denied.