### United States *v.* Schlesinger and others.*

(*Circuit Court, D. Massachusetts.* December 29, 1882.)

**1. Duties on Imports—Recovery Back—Protest and Appeal.**

In an action to recover back duties illegally exacted, protest and appeal are necessary as a condition precedent to the right to recover, even when the United States are plaintiffs in an action to recover duties in excess of those already paid.

**2. Same—Remedy of Importer.**

Where the United States sue to recover duties upon importations of what is called steel in bars, which was entered and duties paid as upon "scrap steel," and the goods were delivered before the final liquidation, the defendants may set up facts which make the assessment illegal in such action, and are not bound to suffer judgment to be entered against them, and proceed by suit to recover back the amount paid at any time within 90 days thereafter, under the provisions of section 2931 of the Revised Statutes.

*Geo. P. Sanger*, U. S. Atty., for plaintiffs.

*L. S. Dabney* and *W. S. Hall*, for defendants.

Lowell, C. J. Four cases, of which this is one, have been argued here within a short time, which bring up for review the decision in *U. S.* v. *Cousinery*, 7 Ben. 251. I shall criticise that case with as much freedom as if I had made it under like circumstances; that is, when the important considerations affecting the decision were not argued and escaped notice.

The cases here pending are of two kinds: those in which the United States sue for duties, and those in which the importers sue to recover back duties; and the learned counsel for the importers inform me that they are much embarrassed by the principal case. In the four cases now under advisement the importers had received delivery of their goods, and had paid the assessed or the estimated duties, and when a new liquidation was made, they protested and appealed, and

*Affirmed. See 7 Sup. Ct. Rep. 442,

the decision of the secretary was against them. They have, therefore, taken all the steps prescribed by Rev. St. § 2931, which was formerly St. 30 June, 1864, § 14, (13 St. 213.) Now their embarrassment occurs in this way: *U. S.* v. *Cousinery* is decided upon the theory that the importer who has duly protested and appealed may pay and then recover back the amount illegally charged to him. This *ratio decidendi* is given on pages 255 and 256 of the report. But in a case like the present, where an importer has received all his goods, before the last liquidation is made, if he should pay the additional sum demanded and sue to recover back what was excessive, he would be met by the objection that he had paid voluntarily; and under a familiar principle of law he cannot maintain an action under those circumstances; while if he refuses to pay and is sued, *U. S.* v. *Cousinery* decides that he has no right to defend, but must pay and sue.

Nothing can be more familiar than the rules of law on the general subject of recovering money once paid. It would be an impertinence to cite authorities, and I shall cite none, except to show that the revenue laws lay down no different doctrine from that prevailing at the common law, but simply permit the common law to operate.

In *Elliott* v. *Swartwout*, 10 Pet. 137, the usual rule was applied that one who pays money extorted from him by a public officer who has in his possession property of the payer, so that he can enforce payment without suit, is at such a disadvantage that he is considered as paying under duress, and may recover back whatever was illegally exacted.

In *Cary* v. *Curtis*, 3 How. 236, the supreme court modified this rule by holding that a public officer who was absolutely bound to pay into the treasury every dollar which he received, so that he could not protect himself in case of suit, was not liable to an action. Congress, then in session, approved of the dissenting opinion of STORY and MCLEAN, JJ., in that case, and promptly reversed this decision by St. 26 Feb. 1845, (5 St. 727.) This statute gave no new rights. It simply removed the obstruction of *Cary* v. *Curtis*, and left the importer to his remedy at common law. That remedy, of course, was to pay, if compelled by the retention of his goods, and then to sue. If he paid after his goods had been delivered, as, for instance, upon a bond, he could not recover, but should have resisted payment. *Marshall* v. *Redfield*, 4 Blatchf. 221.

So, when the internal-revenue acts were passed, it was a serious question whether the tax-payer had a remedy in court, because those

laws required the collector to make daily payments to the treasury without defalcation or deduction. See the remarks of NELSON, J., in Cutting v. Gilbert, 5 Blatchf. 259. But inasmuch as the statute, in some parts, took for granted that an action might be brought, it was held that the remedy at common law was preserved. Philadelphia v. Collector, 5 Wall. 720. The collector of internal revenue, unlike the collector of customs, has power to issue a summary warrant of distress. Therefore, at common law, a payment to him is compulsory, and as soon as the case I have last cited was decided, Judge SHIPMAN ruled in Sheafe v. Ketchum, 6 Int. Rev. Rec. 4, that if the plaintiff had paid to avoid a distraint of his property, and the tax was illegal, he could recover; so CLIFFORD, J., in two passages of the opinion, Mandell v. Pierce, 3 Cliff. 134, says that same thing. In the theory of the law the collectors of customs retain the goods or money until the duties are paid; but if they fail to keep this advantage, they have no coercive power.

It is safe to say, I think, that no case has been decided in which, under objection, a plaintiff has ever recovered of a collector, or of any one else, a payment which was not, in the legal sense, coerced. It is not mentioned in every case, because it is one of those familiar facts which are taken for granted.

Does the act of 1864, now Rev. St. § 2931, change all this? I think not. That act is not an enabling, but a limiting and restricting act. It does not purport to tell us when an action may be maintained, but only that the decision of the department shall be final unless certain things are done. It would be convenient for the importer, and, perhaps, for the United States, that the rule should be as assumed in U. S. v. Cousinery, but I cannot find it in the law; on the contrary, section 3011, which covers a part of the same ground, refers to a payment to obtain possession of the merchandise.

It is argued that section 2931 applies to certain tonnage dues and fees not mentioned in section 3011, as well as to duties. The same answer holds good that the statute does not say that all such fees and dues may be recovered back if there has been a protest and appeal, but that they never shall unless these steps have been taken. It is the fact that the collector has power to coerce the payment of all such demands by withholding clearances and papers, and if payment is made to obtain these, the money may be recovered if the charge was illegal or excessive, and due protest and appeal were made.

The statutes of 1839, (as amended,) of 1845 and 1864, are all to found in the Revised Statutes, so that the law now reads that the

collector shall pay into the treasury all moneys received by him, (Rev. St. §§ 3615, 3617;) that the importer who pays to obtain possession of his merchandise may recover back what is wrongly charged, (section 3011;) provided he makes such protest and appeal as the act of 1864 required, (sections 3011, 2931.) Who can doubt that in construing these sections together, as they must be construed, they leave to the tax-payer the right to recover back only when he has made due protest and appeal, and has been compelled to pay? My opinion would be the same if section 3011 had been omitted from the Revision; but its presence strengthens the argument.

I am of opinion, therefore, that in the two cases in which the importers paid without compulsion they cannot recover. Judge NELSON concurs in this opinion, and in the case lately tried before him will enter judgment for the collector.

This decision, by necessary intendment, gives the right to defend an action where the United States are plaintiffs. The learned judge who decided *U. S.* v. *Cousinery*, appears at a later time to have had his attention called to the fact that there might be cases of payment in which the importer could not sue, for in *U. S.* v. *Phelps,* 17 Blatchf. 312, he said, (page 315:)

"The only remedy of the importer is in a suit to recover back the duties after paying them, *in a case where such a suit is allowed.* This was the ruling in *U. S.* v. *Cousinery,* 7 Ben. 251, in the district court for this district, following *Westray* v. *U. S.* 18 Wall. 322. Such ruling was approved by Chief Justice WAITE in *Watt* v. *U. S.* 15 Blatchf. 29, and must be held to be the law until it is reversed."

I have italicised the remark which I understand to mean that though one set of meritorious importers may have no remedy at all, yet that no remedy is their only remedy. The point is not decided in *Westray* v. *U. S.* 18 Wall. 322, nor in *Watt* v. *U. S.* 15 Blatchf. 29. The chief justice cites *Cousinery's Case* with approval, as I have done in one case; but I take leave to think that in the one instance, as in the other, the approval was of the general doctrine that the circuit courts must follow *Westray* v. *U. S.,* and require protest and appeal even when the United States are plaintiffs, however they may be dissatisfied with it. I think so because the chief justice took pains to show that there had been no effectual appeal in *Watt* v. *U. S.;* pains which were wasted if there could be no defense under any circumstances.

It cannot be the law that the only persons who have no judicial remedy are those who are the most injured by having a fresh demand

made upon them after they have paid all that was supposed to be due, and have received their goods.

In the case now before me the United States sue to recover duties upon four importations of what they call steel in bars, which was entered and duties paid as upon "scrap-steel," and the goods were delivered before the final liquidation, and the precise case of *U. S.* v. *Cousinery* is presented. I have given some reasons for saying that they may defend this action. I will add a secondary, though sufficient, reason. The statute (section 2931) upon which the *Cousinery Case* rests declares the decision of the secretary conclusive, unless the importer shall bring action within 90 days after payment, and these defendants have not paid, and, of course, the 90 days have not begun to run; and equally, of course, the secretary's decision is not final. Therefore, if the United States recover judgment and collect the money, the defendants could recover it back at any time within 90 days thereafter if the facts make the assessment illegal, unless they can now set up the same facts; which, of course, they can do to avoid circuity of action. The only possible ground for not permitting them to recover in such supposed action is that they can and must make their defense here and now.

Upon the facts it is certain, and is not now seriously denied, that the goods imported were scrap-steel, and that the United States cannot recover the higher rate of duty.

It appears, however, that through some mistake of weights in the invoices, and without fraud, a small sum is due on the defendants' own classification. Neither the liquidations nor the declaration in the action informed the defendants of this, and it was agreed that an amendment should be filed, but that costs should not follow the judgment unless I thought fit to award them, which I do not.

The United States will have 20 days to except to my ruling upon the points of law involved in the case, after which there will be judgment for the plaintiffs for $116.50 only.