### WRIGHT *v.* BLAKESLEE.

A., who died in October, 1846, devised his real estate to his daughter for life,
with remainder in fee to her son B., should he survive her.   She died in Sep-
tember, 1865.   B. was duly notified to make the return required by sect. 14 of
the Internal Revenue Act of June 30, 1864 (13 Stat. 226), and on his refusal
to do so was summoned in June, 1867, to appear before the assessor of the
proper district.   He appeared, and claimed "that the estate was not liable to
assessment for a succession tax."   Thereupon the assessor assessed a tax of
one per cent upon the full value of the property, and added thereto a penalty
of fifty per cent and costs, — all of which B., July 20, 1867, paid under protest
to the collector.   The Commissioner of Internal Revenue, to whom B. ap-
pealed, rendered a decision adverse to his claim, July 3, 1873.   B. brought
this action, June 24, 1875, against the collector to recover the amount so paid.
*Held,* 1. That the action was not barred by the Statute of Limitations.
2. That the tax was properly assessed and the penalty erroneously imposed.

ERROR to the Circuit Court of the United States for the
Northern District of New York.

The facts are stated in the opinion of the court.

*Mr. A. C. Miller* for the plaintiff in error.

*The Solicitor-General, contra.*

MR. JUSTICE BRADLEY delivered the opinion of the court.

This is an action brought by B. Huntington Wright, the
plaintiff in error, against Blakeslee, the defendant, formerly
collector of internal revenue for the twenty-first revenue dis-
trict of New York, to recover the amount of a succession tax
collected from the plaintiff and his sister in 1867, the latter
having assigned her interest to the plaintiff.

A jury was waived, and the cause was tried by the court.
From the findings the following facts appear: Henry Hunt-
ington, of Oneida County, New York, died in October, 1846,
leaving a will, by which, amongst other things, he devised to

his executors certain real estate, in trust, to receive the rents and profits, and apply the same to the sole and separate use of his daughter Henrietta (if a *feme covert* at his death) during the term of her natural life, and at her decease, if she should leave issue surviving, the testator gave and devised the said real estate to such issue absolutely and in fee.    When the testator died, his daughter Henrietta was the wife of one Benjamin H. Wright, and had two children living, B. Huntington Wright (the plaintiff) and a daughter.    Henrietta died in September, 1865, leaving her said two children and her husband surviving. In June, 1867, the plaintiff and his sister were notified by the assessor to make return, as required by the fourteenth section of the Internal Revenue Act of June 30, 1864 (13 Stat. 226) ; and they both refused and declined to make any return, or give any knowledge or information as to the quantity, location, or value of the real estate, and thereupon they were summoned to appear before the assessor in relation thereto.    They appeared accordingly, and claimed that the estate was not liable to assessment for a succession tax.    The assessor decided against them, and assessed a tax of one per cent on the full value of the property, and added thereto a penalty of fifty per cent and expenses, making in all $595.59.    In June, 1867, the assessor notified the parties of the tax imposed, the value of the property, and the penalty affixed.    The assessment or tax, with the penalty, was placed upon the assessment roll, and delivered to the collector (the defendant) for collection, and he notified the parties to pay the tax.

On the 31st of July, 1867, the parties paid the tax under protest, the tax paid amounting to $595.59, of which $389.56 was tax, $194.78 was penalty, and $11.25 was the expenses for making the assessment and valuation.    The amount assessed upon each, viz. B. Huntington Wright and Henrietta H. Wright, was $297.29.

On the 5th of October, 1872, the Commissioner of Internal Revenue wrote the parties that the claim to have the tax refunded had not been submitted to the department, and forwarded them a blank to be filled up and transmitted to the department, and they would then pass upon the case upon its merits.

About the 3d of January, 1873, the appeal was perfected and filed with the commissioner.

. On the 3d of July, 1873, the commissioner rendered his decision upon the merits, rejecting the whole claim, and gave notice thereof.

On the 15th of June, 1875, Henrietta D. Wright, one of the parties against whom one-half of the tax had been levied and collected, transferred her claim to the plaintiff.

On the same day a summons was delivered to the sheriff of New York to serve on defendant.

On the 24th of June, 1875, the summons was actually served on defendant. The action was originally brought in the State court, but was removed into the Circuit Court of the United States, upon proceedings had under the statute.

Upon these facts the court decided, as matter of law, that the tax and penalty were properly assessed and collected, and that the plaintiff ought not to recover.

The first and principal question in the case is whether the devolution of the property to the children of Henrietta Wright on her death in September, 1865, was a " succession," within the meaning of sect. 127 of the Internal Revenue Act then in force. 13 Stat. 287. The language of that section is as follows : —

" That every past or future disposition of real estate by will, deed, or laws of descent, by reason whereof any person shall become beneficially entitled, in possession or expectancy, to any real estate or the income thereof, upon the death of any person dying after the passing of this act, shall be deemed to confer on the person entitled by reason of any such disposition a 'succession ; ' and the term 'successor ' shall denote the person so entitled, and the term 'predecessor ' shall denote the grantor, testator, ancestor, or other person from whom the interest of the successor has been or shall be derived."

Comparing the terms of the devise of Henry Huntington with the language of this section, we do not see where there is any room for doubt. The will clearly gave to the trustees an estate for the life of Henrietta Wright, with remainder in fee to her children surviving her. . At her death, in 1865, those children did " become beneficially entitled in possession,"

and every condition of the law was fulfilled. There was a "past" "disposition of real estate by will," "by reason whereof" the children of Henrietta Wright became "benefi-cially entitled, in possession," to the property devised, "upon the death of [a] person dying after the passage of this act." We think the case is directly within the terms and meaning of the act. Up to the moment of Henrietta Wright's death her children had no interest in the land except a bare contin-gent remainder expectant upon her death and their surviving her. At her death it came to them as an estate in fee in pos-session absolute. We cannot imagine a plainer case of devo-lution within the description of the law.

It is suggested that as the act refers to the acquisition of estates "in possession or expectancy," it cannot mean to embrace estates which had already accrued as estates "in expectancy" before the act was passed. But such an im-plication cannot be allowed to prevail against the express words of the act, which include all estates to which a per-son should become beneficially entitled upon the death of any person dying after the passage of the act. In the present case, the children of Henrietta Wright first became "benefi-cially entitled" to the property in question at their mother's death. They then became "beneficially entitled in posses-sion."

It is also suggested that the case is more aptly described in sect. 128 of that act, which is as follows: —

"That where any real estate shall, at or after the passage of this act, be subject to any charge, estate, or interest, determinable by the death of any person, or at any period ascertainable only by reference to death, the increase or benefit accruing to any person upon the extinction or determination of such charge, estate, or interest shall be deemed to be a succession accruing to the person then entitled beneficially to the real estate or income thereof."

We do not assent to this view. This section is evidently intended to meet the cases of estates burdened by determinable incumbrances, such as rent-charges, leases for years, and quali-fied interests, which do not suspend the taking effect of the estate in the land, but only subject it to some burden. Where,

however, a remainder is dependent upon a life-estate in the land, it does not take effect as an estate in possession until the life-estate is determined. Till then, it is a mere expectancy. The present case is one of this kind, and we think clearly comes within the description of sect. 127.

Another point made by the plaintiff against the assessment relates to the fifty per cent added to the amount of the succession tax, and exacted by way of penalty for refusing to make a return as required by the statute. This penalty we think was erroneously imposed. The assessor evidently thought that he was authorized to impose the penalty prescribed by the fourteenth section of the act of 1864 (as amended by the act of July 13, 1866), which was, it is true, a penalty of fifty per cent of the tax for refusal or neglect to make a list or return. But an inspection of that section and of the context to which it belongs shows that it related to the annual and monthly lists and returns to be made by parties taxable under the law. So sect. 118 (as amended by the act of March 2, 1867), which also imposed a penalty of fifty per cent for such neglect and refusal, and was relied on by the court below, related only to the income tax. But the penalty for failing to return and give notice of a succession tax is provided for in a distinct section, to wit, sect. 148 of the act of 1864 (as amended by the act of 1866), which is found in immediate collocation with the sections relating to the succession tax. This section declares that if any person required to give such notice [of a succession] should wilfully neglect to do so within the time required by law, he should be liable to pay to the United States a sum equal to ten per cent upon the amount of tax payable by him. This is the specific penalty provided for the special case, and necessarily excludes any other. We are satisfied, therefore, that the penalty of fifty per cent which was actually imposed was wrong, and ought not to have been exacted. There is, therefore, no doubt of the plaintiff's right to recover the amount of this penalty, if, when paid, the protest against its exaction was sufficient.

On this point it is to be observed that the case stands on a different ground from that of the illegal exaction of duties on imports. To recover these, the statute makes it necessary that

the party interested should give notice in writing to the collector, if dissatisfied with his decision, setting forth distinctly and specifically the grounds of his objection thereto. Act of June 30, 1864, sect. 14 ; 13 Stat. 214; Rev. Stat., sect. 2931; *Westray* v. *United States*, 18 Wall. 322; *Barney, Collector*, v. *Watson et al.*, 92 U. S. 449; *Davies* v. *Arthur*, 96 id. 148. No such written notice or protest is required of a party paying illegal taxes under the internal revenue laws. He must pay under protest in some form, it is true, or his payment will be deemed voluntary. *City of Philadelphia* v. *The Collector*, 5 Wall. 720 ; *The Collector* v. *Hubbard*, 12 id. 1. But whilst a written protest would in all cases be most convenient, there is no statutory requirement that the protest shall be in writing. In the present case, the court merely finds that the payment of the tax and penalty was made under protest, which may have been either written or verbal. We think that this finding is sufficient to show that the payment was not voluntary. It is apparent from the findings, it is true, that the objection of the parties was particularly made against the legality of the tax, and not against the penalty as distinct therefrom. But, of course, the objection included the penalty as well as the tax ; and as the latter was clearly illegal, we think that the plaintiff should have had judgment for the amount thereof, unless barred by the Statute of Limitations.

We think that the defence of the Statute of Limitations cannot be maintained. Under the nineteenth section of the act of July 13, 1866 (14 Stat. 152), no suit could be maintained for the recovery of a tax illegally collected until appeal should have been duly made to the Commissioner of Internal Revenue, and his decision had thereon. The act contained other provisions not material to this case. In July, 1867, when the tax was paid, there was no statutory limitation of time for presenting claims for remission of taxes to the Commissioner of Internal Revenue.

On the 6th of June, 1872, an act was passed, by the forty-fourth section of which it was provided that all suits for the recovery of any internal tax alleged to have been erroneously assessed or collected, or any penalty claimed to have been collected without authority, should be brought within two years

next after the cause of action accrued, and not after; and all claims for refunding any internal tax or penalty should be presented to the commissioner within two years next after the cause of action accrued, and not after: *Provided*, that actions for claims which had accrued prior to the passage of the act should be commenced in the courts or presented to the commissioner within one year from the date of such passage: *And provided further*, that where a claim should be pending before the commissioner, the claimant might bring his action within one year after such decision, and not after. 17 Stat. 257. When this act was passed, the claim in the present case had not been formally presented to the commissioner, and so did not come within the last proviso; but, for the purpose of presentation to the commissioner, it was embraced in the first proviso. The parties, therefore, had by the act one year to present their claim to the commissioner; and it was thus presented on the third day of January, 1873, within the time allowed for that purpose.

The commissioner rendered his decision on the third day of July, 1873, and then, for the first time, the parties had a right to bring suit against the collector. Then their cause of action first accrued against him. It is manifest, therefore, that the cause of action against the collector was not embraced within either the first or the second proviso of the section just cited; and that it stood upon the primary enactment of that section, requiring that suit should be brought within two years next after the cause of action accrued. This would give the plaintiff until the 3d of July, 1875, to bring his action.

Thus the matter stood when the Revised Statutes went into effect on the 22d of June, 1874, and there is nothing in them to change the plaintiff's right. The forty-fourth section of the act of 1872 is substantially re-enacted in sect. 3227 of the Revised Statutes, which contains no modifications of phraseology that affect the present case. And as it appears from the findings of the court that this suit was commenced by delivery of the summons to the sheriff on the 15th of June, 1875, it is apparent that the defence of the Statute of Limitations cannot be maintained.

The judgment of the Circuit Court will be reversed, and the

case remanded with instructions to enter judgment in favor of the plaintiff for the amount of the penalties exacted from the plaintiff and Henrietta H. Wright, with interest and costs; and it is

*So ordered.*