## In re STILES' ESTATE.

### (Surrogate's Court, Orleans County. May, 1888.)

1. WILLS—CONSTRUCTION—CREATION OF TRUST.
     A will giving real and personal property to the use of A. for life, with directions to the executors to use so much of the principal as is necessary to A.'s comfortable support, if the interest should prove insufficient, and a further provision that testator's daughter should, if in need, share the use of the estate with A., remainder to said daughter and her husband for their respective lives, remainder over to a charitable society in fee, creates no trust in the executors.

2. SAME—TENANCY IN COMMON—HUSBAND AND WIFE.
     The daughter and her husband would not, because of their being husband and wife, be joint tenants, or tenants by the entirety, but their estate would be a tenancy in common, with cross-remainder, as if unmarried.

3. SAME—PERPETUITIES.
     The cross-remainder, being in effect a third life-estate, is void, and may be dropped, and the devise otherwise held valid, under 3 Rev. St. N. Y. 2256, §§ 1, 2, prohibiting the suspension of alienation for more than two lives in being, but providing that

life-estates intervening between the life-estates of the two first named and the ulti-
mate remainder shall be void, and the remainder be as valid as if limited immedi-
ately upon the determination of the two valid particular estates.

4. CHARITIES—STATUTORY REQUIREMENTS—AMOUNT OF BEQUEST.
    Under Laws N. Y. 1860, c. 360, providing that a devise to a charitable or other so-
ciety shall not be valid as to more than one-half of the testator's estate, the values
of the estate and of the ultimate remainder-man's interest under the devise men-
tioned are found as follows: From the whole cash value of the estate deduct the
widow's dower in the real estate; half the residue is the most that can be held by
the society. From the whole cash value of the estate, less the dower, deduct the
present worth of the life-estates; the sum left is the cash value of the remainder,
to which, if not greater than the half of the cash value of the estate already calcu-
lated, the society is entitled.

Settlement of the accounts of John H. White, administrator *c. t. a.* of the
estate of Israel Stiles, deceased.

*W. C. Ramsdale*, (*John H. White, pro se*,) for administrator. *Thompson
& Spencer*, for Ellen E. Sanborn and Josiah Sanborn, devisees. *T. C. Mont-
gomery*, for the Rochester Orphan Asylum, a devisee.

SIGNOR, S. In order to determine what disposition shall be made of funds
in the hands of the administrator, and to properly settle and allow his account,
it becomes necessary to construe the will of the testator, which, under such
circumstances, falls within the jurisdiction of this court. *Purdy* v. *Hayt*,
92 N. Y. 446. The testator gave both his real estate and personal property by
the same clauses of the will. He first gives the use of all his property to his
wife during her life, with directions to his executors, if by reason of sickness,
infirmity, or accident the interest of his estate shall be insufficient for her
comfortable support and maintenance, to use so much of the principal as may
be necessary for that purpose; and also provides that, should his daughter
Ell n have need of it, she shall share with his wife in the use of his estate.
After the death of his wife, he gives "all the use of my remaining estate
* * * to my daughter Ellen E. Sanborn, and to Josiah Sanborn, her hus-
band, during their life-time, respectively;" and, "*third*, after the decease of
my daughter and her husband, I bequeath all the residue of my estate to the
Rochester City Orphan Asylum." It appears in evidence that there is no
such institution as the Rochester City Orphan Asylum, but that the institu-
tion evidently meant was the Rochester Orphan Asylum, and they are entitled
to any legacy that they would have been entitled to if properly named. *Board*.
v. *Scovell*, 3 Dem. Sur. 516. The will was executed within two months of
the death of the testator, but the Rochester Orphan Asylum having been in-
corporated prior to chapter 319, Laws 1848, (by act passed March 23, 1838,)
that act does not affect this corporation, and the gift is not void on that ac-
count. *Kerr* v. *Dougherty*, 79 N. Y. 327; *Stephenson* v. *Short*, 92 N. Y. 433.

The act of 1860, however, does apply, (chapter 360,) and would render a de-
vise or bequest to this society valid, only as to one-half of the testator's estate,
as he died leaving a wife and child him surviving. The remaining questions
are to be considered for the purpose of determining whether the gift of one-
half to the Rochester Orphan Asylum is valid. It is claimed that the will is
void, as creating a trust, and suspending the power of alienation of the real
estate, and the absolute ownership of the personal property, beyond the statu-
tory limit of two lives in being. The intent of the testator was evidently to
give a life-estate to his wife, then an estate to his daughter and her husband
for life, with cross-remainders; and such would be the effect of the will, un-
less the relation of husband and wife existing creates a different interest.
*Purdy* v. *Hayt*, 92 N. Y. 446, 452. In the last case, the testator gave his
real estate to his two sisters "during their respective lives," and was held to
create an estate as tenants in common, with cross-remainders. The power
of alienation is not suspended at all as to the real estate, by the will, as all the
beneficiaries are in existence, and there is no contingent estate that would in-

terfere with the alienation of the real property. Immediately on the death of the testator, the widow, the daughter and her husband, and the Orphan Asylum could join in a conveyance, and pass the entire title.

There are only two ways in which the power of alienation can be suspended, viz.: "By an express trust, or power in trust, of such a character that the land cannot be alienated during its continuance; or by a contingent limitation." Per RAPALLO, J., in *Radley* v. *Kuhn*, 97 N. Y. 34; *Everitt* v. *Everitt*, 29 N. Y. 71. The contingent limitation does not exist, nor do I think that such a trust is created by the will. It has always been held, and is now the rule, that courts should seek to sustain the expressed will of the testator, where they can do so, and so far as it can be done without contravening the express provisions of the statutes regulating testamentary dispositions. Neither will a trust be raised by implication, where the only effect of such a construction would be to raise it for the purpose of destroying it as soon as created, or of invalidating the instrument by which it is created. *Smith* v. *Edwards*, 88 N. Y. 102. The only portions of the will that could possibly be construed as tending to create a trust are the provisions authorizing the executors to apply a portion of the principal to the use of his wife in certain contingencies; which might seem to imply an intention that they should have the possession of the *corpus* of the estate for that purpose. But in that event, after the death of his wife, no necessity could arise for holding that the title was in the executors. They are not named as trustees, nor is any gift or devise made to them either as trustees or executors. In fact, no power in reference to the real estate seems to be conferred on the executors, unless a power to sell the same for the benefit of the widow, should it become necessary to do so in her life-time, for her support, could be implied. This would, at all events, terminate at her death; and therefore the property seems, without any contingency, to be absolutely vested in the beneficiaries, without any estate in the executors, and without any power conferred upon them to sell, lease, or manage the real estate. If the personal property is retained for the purpose of collecting and paying over the income, it does not necessarily require the creation of a trust to do this. *Smith* v. *Edwards, supra.* Nor does it appear certain that the executors were to hold the personal property during the life-time of the beneficiaries, should they seek to obtain possession of it, upon tendering a proper bond. *Livingston* v. *Murray*, 68 N. Y. 485. I cannot see that the will conveys any power or creates any trust in regard to the management of the real estate. There is no express direction conferring any such power, nor does there appear to be any provision in the will from which such an intent could be inferred; and I am therefore of the opinion that the administrator, in managing the real estate, has acted, and will, if he hereafter continues to act, do so, not by virtue of any power given him by the will, but as an agent for the parties interested, under an agreement with them, either expressed or implied.

While a decision upon this hearing may only incidentally affect the real estate, it is nevertheless proper to discuss the rules and restrictions relating to its disposition and ownership, as it has been held by the court of appeals that the absolute ownership of personal property is only suspended in the same manner as is the power of alienation of real estate. *Gilman* v. *Reddington*, 24 N. Y. 9–18; *Bliven* v. *Seymour*, 88 N. Y. 469–478. If this question had not been so settled, my own views would be in accordance with those expressed by the court in *Converse* v. *Kellogg*, 7 Barb. 596. Section 1, 1 Rev. St. p. 773, (3 Rev. St. 7th Ed. 2256,) provides that the absolute ownership of personal property shall not be suspended for more than two lives in being, etc.; and section 2 provides as follows: "In all other repects, limitations of future or contingent interests of personal property shall be subject to the rules prescribed in the first chapter of this act, in relation to future estates in land." These rules provide that, where a remainder is limited on more than two life-

estates, all the life-estates, subsequent to those of the two persons first named, shall be void, and, upon the death of the two first named, the remainder shall take effect in the same manner as if no other life-estates had been created. It is claimed, in this case, that, while the absolute ownership of personal property is suspended, provided the limitation in excess of two lives in being may be cut off, the remainder is still valid; but it is claimed, upon the other side, that the limitation is upon more than two lives in being, and so created that the excess of two lives cannot be cut off, and that, therefore, the remainder is invalid. The daughter and her husband, unless the relation of husband and wife establishes a different rule, would take as tenants in common, with cross-remainders, after the termination of the life-estate of the widow. *Purdy v. Hayt*, 92 N. Y. 446. The estate of the widow would continue through one life, then the estate of the one first dying would continue through his or her life, and during the life of the survivor, before actual payment of the remainder to the orphan asylum, which would clearly be more than two lives in being. In *Purdy* v. *Hayt, supra*, the will gave certain real estate to the testator's sisters, Jane and Catherine, during their respective lives; and, after their death he directed the income to be paid to his neice, during her life; and that, after her death, the principal should be paid to her children, should she leave any, and, if not, to other beneficiaries named in the will. The court says, at page 452: "We are of opinion that, by the true construction of the will, the devise to the testator's sisters, Jane and Catherine, vested in them as life-estate in the farm as tenants in common, with cross-remainders." In that case, the will gave the executors power to sell after the death of Jane and Catherine; in this case the asylum is to take "after the death of Ellen and her husband." The court in that case say, further, at page 455: "The law, as we have seen, permits only two successive estates in the same property. The two sisters of the testator took, as we have held, an estate in the farm as tenants in common, with cross-remainders for life. The life-estate of his sister Jane, who first died, terminated on her death, and her enjoyment constituted one life-estate in her share. A second life-estate in that share then vested in her sister Catherine, and was spent at her death. The limit of the statute as to that share was then reached, and no subsequent life-estate therein could be limited either in the land or the proceeds;" and held that the life-estate in the proceeds of that share, attempted to be created, was void, but that, in the case of the other sister's share, but one life-estate had run at her death, and that therefore an additional life-estate could be created before the remainder took effect. This case is similar in many respects. The gift there was first to the two as tenants in common, by words in substance the same as those by which the gift in this case is made to Mrs. Sanborn and her husband. The cross-remainders were regarded as equivalent to a life-estate, which might be struck out when necessary to save the devise of the remainder. Notwithstanding the tendency of the decisions to hold that the common-law relations of husband and wife still exist, to some considerable extent, in respect to property, (*Zorntlein* v. *Bram*, 100 N. Y. 12, 2 N. E. Rep. 388; *Robins* v. *McClure*, 100 N. Y. 328, 3 N. E. Rep. 663,) in this case these decisions can have no effect. If the husband takes at all after the wife's death, it is by virtue of the will, and not by virtue of his being her husband. At her death, all her interest ceases, and there would be nothing to pass over to her husband as such; but the will provides, in legal effect, that he shall, in such event, become the legatee to the use which she had before enjoyed. The interests are distinct, although undivided during the life-time of both. The husband could not, as such, have any interest in the body of the estate of which the wife had the use, as she never was the owner of that. The husband and wife in this case were neither joint tenants nor tenants by the entirety, and neither could take anything by right of survivorship. Their interests were the same as if they were unmarried. Regarding them, then, as

tenants in common with cross-remainders, the cross-remainders being, in effect, a third life-estate, may be dropped, and the gift of one-half of the remainder of the testator's estate be held good.

This brings us to the consideration of the share of the estate taken by the asylum, or, rather, to the question, what constitutes one-half of the estate at the time of the testator's death, within the meaning of the statute. The rule for ascertaining this is laid down in *Hollis* v. *Seminary*, 95 N. Y. 166, and must be followed in this case. The time must be of the death of the testator. *Harris* v. *Society*, 2 Abb. Dec. 316. To determine the amount of his estate in accordance with these rules, the widow's dower in the real estate should first be ascertained and deducted. *Chamberlain* v. *Chamberlain*, 43 N. Y. 424. This should ordinarily be ascertained on the principle of life-annuities. This method is resorted to where the time is not actually known, but in this case it appears that the widow lived 6.833 years; so we may adopt that as the number of years' purchase of her annual dower interest. The value of an estate need not be determined by an annuity table in all instances, but may be ascertained by such other means as are in any case available. *Hollis* v. *Seminary*, 95 N. Y. 179. The value of the real estate is conceded to have been, at the death of the testator, $1,300. One-third of this, or $433.33, at 5 per cent., for 6.833 years, is equal to $148.05. The whole property was stipulated to have been worth at the testator's death, and over and above his debts, $6,674.54. Deduct the dower, and it leaves $6,526.49. If my views are correct as to the manner in which the daughter and her husband hold, they are each practically entitled to the use of one-half of this amount, or, computed at 5 per cent., an annuity of $163.16. Mrs. Sanborn, at the death of the testator, was 41 years of age; and by the Northampton table her annuity was worth 11.695 years' purchase, or $1,908.16. Mr. Sanborn's age was 58, and his annuity was worth 8.801 years' purchase, or $1,436.97. The present worth of all the legacies was the present worth of the life-estates and remainders making up the sum of $6,526.49. The gift of the whole of this, payable one-half at the death of Mrs. Sanborn, and one-half at the death of Mr. Sanborn, is not equal to the two life-estates, and therefore is not in excess of the amount which the testator could give to a charitable society. The words of the will, giving the remainder after the death of the life-tenant, did not postpone its vesting. *Baker* v. *Woods*, 1 Sandf. Ch. 131; *In re Mahan*, 98 N. Y. 372. The administrator is entitled to claim his full commissions on income which has annually been ascertained and paid over. *Hancox* v. *Meeker*, 95 N. Y. 528. Where an annual ascertainment and paying over of income has not actually taken place, he is entitled to only one set of commissions for receiving and paying out, to be computed on the aggregate amount of principal and income; reinvestments not being included in this aggregate. *Betts* v. *Betts*, 4 Abb. N. C. 437.