KAHN et al. v. HEROLD, Collector of Internal Revenue, etc.

(Circuit Court, D. New Jersey. July 21, 1906.)

1. INTERNAL REVENUE—INHERITANCE TAX—PAYMENT—PROTEST—VOLUNTARY PAYMENT—RECOVERY.

Where, at the time certain executors paid an internal revenue inheritance tax on a life estate under protest, they had no knowledge that the life tenant had died and that the life estate had therefore terminated, the payment was not voluntary so as to preclude a recovery thereof.

2. EVIDENCE—LIFE ESTATES—VALUE—USE OF LIFE TABLES.

Where, at the time certain internal revenue inheritance taxes were assessed on the value of a life estate, such estate had been already terminated by the death of the life tenant, it was improper to use life tables to determine the value of such life estate.

3. INTERNAL REVENUE—INHERITANCE TAX—PAYMENT—RECOVERY.

Where an internal revenue inheritance tax was assessed and paid on the supposed value of a life estate, as determined by life tables at a time

when the life estate had terminated by the death of the life tenant, but such fact was not known either to the executors or the internal revenue officers, the executors were entitled to recover the excess of the amount properly taxable under the facts as they actually existed as money paid under mistake of fact.

McCarter & English, for plaintiffs.

John B. Vreeland, Dist. Atty., and H. P. Lindabury, Asst. Dist. Atty., for defendant.

CROSS, District Judge. The plaintiffs, as executors of the last will of Abraham Wolff, deceased, sue to recover the sum of $37,673.13, which they claim was the amount of the tax illegally collected by the defendant upon a life estate devised by said will, to Clara W. Wertheim, a daughter of said deceased. The testator died October 1, 1900, leaving a last will and testament, whereby he appointed the plaintiffs his executors, who duly qualified as such, and took upon themselves the burden of the administration of his estate November 7, 1900. The twenty-eighth section of his will, which it is admitted is the only one affecting this case is as follows:

"All the rest, residue and remainder of my estate, both real and personal, of which I may die seized and possessed and wherever situate or being, except as hereinbefore otherwise provided, including all lapsed legacies, I give, devise and bequeath to my trustees, the survivors and survivor of them and his successors, upon the following trusts, that is to say: (1) To divide, set apart and hold the same in as many equal portions or shares as I shall leave daughters me surviving and the issue of a deceased daughter, allotting, however, and turning over to the issue of a deceased daughter only the portion or share which their parent would have taken if living, that is to say per stirpes and not per capita, and as to the share of a surviving daughter, to invest and keep invested the personal estate and proceeds of real estate of such share, if sold, in such securities as by the thirty-sixth article of this my will they are authorized to invest in. (2) To collect and receive the rents, issues, interest and income of the portion or share so to be set apart for each of my said daughters and to apply the same to her use so long as she shall live free from any control of her husband. (3) Upon the death of such daughter leaving issue her surviving, to dispose of her share or portion among such issue in shares as she may appoint by will, and in default of such appointment, or so far as such appointment shall not be made, to dispose thereof among such issue in shares per stirpes and not per capita, and if she shall leave no issue her surviving to continue to hold her share or portion for the benefit of her sister, if living, for life, in trust to collect and receive the rents, issues, interest and income thereof, and to apply the same to her use so long as she shall live, and upon or in case of her death, to divide the same to and among her issue, if any, in shares as she may appoint by will, and in default of such appointment, or so far as such appointment shall not be made, to dispose thereof among such issue, in shares per stirpes and not per capita, and in default of such issue to divide the same to and among the following persons in the proportions herein provided, that is to say: [naming them.]"

Other paragraphs follow which need not be recited. The testator left him surviving two daughters, Addie W. Kahn and Clara W. Wertheim, and under the foregoing section of his will, each was entitled to a life interest in one-half of his residuary estate. The said Clara W. Wertheim, died August 15, 1903, 2 years, 10 months and 14 days after the death of said testator, Abraham Wolff.

On May 19, 1903, the executors, pursuant to the requirements

of section 30 of war revenue act (Act June 13, 1898, c. 448, 30 Stat. 465 [U. S. Comp. St. 1901, p. 2308]) filed with the defendant a schedule and return, together with an affidavit showing the legacies and distributive shares arising from the personal property of every kind, belonging to the estate of Abraham Wolff, including therein the life interests of the two daughters, Mrs. Kahn and Mrs. Wertheim, under the foregoing section of his will.    This affidavit was filed with the return for the purpose of bringing to the attention of the collector, certain items not included in the return, which the ex·ecutors claimed were not taxable.    These disputed items, however, had no relation to the claim in suit.    On July 10th the plaintiffs were informed by a letter from the defendant that the Commissioner of Internal Revenue claimed that the returns and schedules as filed were, for certain reasons specified, erroneous and defective, and the executors were requested to forward a new return for transmission to the department.    Some correspondence thereupon ensued between the executors, the Commissioner and collector, and one of the counsel of the executors, on August 13, 1903, went to Washington in their behalf and attended personally before the Commissioner and discussed with him the legal questions involved, and claimed that there was no occasion to file a new return until after the legal propositions in dispute had been settled.    The Commissioner said that he would take the matter under advisement.    There was some further correspondence between the Commissioner and the counsel of the executors, and on September 8, 1903, the Deputy Commissioner advised them that no further information was desired, and that action would be be taken in the matter in the near future.    This was in reply to a letter from them dated September 2, 1903, asking whether anything further by way of proof or brief was required, and to which was appended this statement:    "We understand that no assessment has yet been made."    Nothing further transpired until October 26, 1903, when the plaintiffs received a notice from the collector stating that a tax of $107,398.16 had been assessed upon the estate, and demanding its payment.    The tax so assessed included a tax on the life interests of the two daughters of the testator in the estate of their father.    The portion of the estate which was given Mrs. Wertheim, in trust for her benefit for life, amounted, as computed by the Commissioner of Internal Revenue, to $2,647,768.97, and the clear value of her life interest, as computed under the mortality tables, was $1,870,367.08, which, taxed at the rate of $2.25 per $100, amounted to the sum of $42,081.91, which sum, included with other taxes of the estate, was paid under protest November 4, 1903.    The assessment as finally made by the Commissioner was based, not upon any new return made by the executors, but upon the original return and affidavit which at first were adjudged insufficient by the Commissioner.    The Commissioner did, however, add to the assessment some items not included in the schedule, but which were brought to his attention by the supplemental affidavit filed therewith.    The tax thus assessed was not paid until between two and three months after the death of Mrs. Wertheim. The payment when made by the executors was made under protest,

147 F.—37

but without notice or knowledge that the life tenant was then dead. So far as the record shows, both parties were ignorant of her death when the tax was paid.

Some time after its payment, and on April 4, 1904, a petition was filed by the executors asking to have $26,637.59 of the total amount paid by them, refunded. This petition did not embrace the taxes for which recovery is sought in this suit, but only such part as had been in dispute between the executors and the Commissioner before the assessment was made. The claim made under the foregoing petition was subsequently, and on April 11, 1905, allowed to the extent of $13,983.36. Almost immediately thereafter, and before payment to the executors of the amount of such allowance, the department was notified by them that they intended to file a further petition, asking that another portion of the taxes paid, be refunded. The foregoing notification was given in order that the department might withhold, if it cared to, the rebate allowed under the first petition, until the second petition could be filed, and its merits determined. Such a petition was subsequently and on May 15, 1905, filed for the return of $37,673.13 with interest; being the tax in controversy herein. There was considerable correspondence between the counsel of the executors and the department with reference to the subject-matter of this second claim, but it was later altogether disallowed. This suit was thereupon instituted within two years from the time the tax was paid, and before the statute of limitations barred its prosecution.

The first question for consideration is whether the tax was voluntarily paid. At the time it was paid the executors protested verbally and in writing against the entire tax, on the ground that it was illegal and invalid, and had been illegally and improperly assessed, and it was stated that they paid the same only under protest, and only because of the requirements of the department, and to prevent proceedings to compel collection with interest and penalties, and they further particularly protested that the said tax was illegal and invalid and was illegally and improperly assessed so far as it included the tax on the life interests created under said will, and added that the tax thereon was paid only under protest, and for the reasons mentioned in their general protest. It is claimed on behalf of the defendant that the protest above outlined was insufficient, and that the payment of the tax was voluntarily made, notwithstanding that a written demand had been made upon the executors for the payment of the tax in the following form:

List for Month of Sept., 1903, Div. 12.

United States Internal Revenue Office of the Collector of Internal Revenue, Fifth District, State of New Jersey.

"Newark, Oct. 26, 1903.

"Messrs. Otto H. Kahn and Henri P. Wertheim, Executors, Estate of Abraham Wolff, Dec'd.:

"You are hereby notified that a tax, under the internal revenue laws of the United States, amounting to one hundred seven thousand three hundred ninety eight and 16/100 dollars, the same being a tax upon legacies and distributive shares, has been assessed against you by the Commissioner of Internal Revenue and transmitted by him to me for collection. Demand is hereby made for this

tax. which is due and payable within one year of death of testator, when death occurred on or after July 1, 1901, and in case testator died before July 1, 1901, tax must be paid before July 1, 1902, but in all cases payment of tax before distribution is imperative, and unless paid on or before the day when due and payable, it will become my duty to collect the same with a penalty of five per centum additional, and interest at one per centum per month.

' "Payment may be made to me at Newark P. O. Building. $107,398.16

"[Signed]            Herman C. H. Herold, Collector."

This notice was accompanied by a letter from the defendant dated October 28, 1903, reciting the transmission therewith of the notice and demand for payment above set forth.

As to what constitutes voluntary payment in matters of taxation, we find the rule laid down in 27 Am. & Eng. En. of Law (2d Ed.) tit. Taxation, p. 760, as follows:

"Where a party pays an illegal demand with full knowledge of all the facts which render it illegal, without an immediate and urgent necessity therefor, to release his person or property from detention, or to prevent an immediate seizure of his person or property, such payment must be deemed voluntary, and cannot be recovered back."

The foregoing rule follows substantially the language of the Supreme Court in Little v. Bowers, 134 U. S. 547, 554, 10 Sup. Ct. 620, 33 L. Ed. 1016, which in turn follows the language of the same court in Railroad Company v. Commissioners, 98 U. S. 541, 543, 25 L. Ed. 196. In the latter case the court, after stating the rule in the language hereinabove given, adds:

"This, as we understand it, is a correct statement of the rule of the common law."

In Lamborn v. County Commissioners, 97 U. S. 181, 185, 24 L. Ed. 926, Mr. Justice Bradley, in delivering the opinion of the court, says:

"A voluntary payment made with the full knowledge of all the facts and circumstances of the case, though made under a mistaken view of the law, cannot be revoked, and the money so paid cannot be recovered back." Citing case.

See, also, Philadelphia v. Collector, 5 Wall. 720, 732, 18 L. Ed. 614; Chesebrough v. The United States, 192 U. S. 253, 259, 24 Sup. Ct. 262, 48 L. Ed. 432.

From these decisions it is clearly apparent that in order to constitute a voluntary payment, payment must be made with full knowledge of all the facts and circumstances, and that where such knowledge is wanting the payment, whatever else it may be, is not voluntary. This view seems to dispose of the questions now under consideration. The payment made by the plaintiffs herein was not voluntary. They were ignorant of the fact that the life tenancy, upon which the taxes they were paying had been assessed, had been terminated by the death of the life tenant before such assessment was made. Had they known this fact it can hardly be presumed that they would have paid the tax. The knowledge which they lacked was essential to the exercise of sound judgment, as well as to a correct understanding of the legal situation. But beyond this, the defend-

ant claims that the protest made and filed at the time of the payment was inadequate and insufficient for the reason that it was an omnibus protest, and did not specify the ground now insisted upon. A sufficient answer to this insistment lies in the fact that they did not know the reason which they now urge. This of itself made the payment involuntary, and if it did not entirely obviate the necessity of any protest, rendered its form comparatively unimportant. While it is true that the protest was broad and general, it was, nevertheless, directed particularly to the tax assessed against the interests of the life tenants. I do not find any case which holds that under such circumstances, or indeed under any circumstances, a protest must be couched in the terms, and with the certainty of a common-law pleading. The case of Wright v. Blakeslee, 101 U. S. 174, 25 L. Ed. 1048, is both instructive and authoritative upon this point. Mr. Justice Bradley (page 178 of 101 U. S. [25 L. Ed. 1048]) says:

"On this point it is to be observed that the case stands on a different ground from that of the illegal exaction of duties on imports. To recover these, the statute makes it necessary that the party interested should give notice in writing to the collector, if dissatisfied with his decision, setting forth distinctly and specifically the grounds of his objection thereto. Act of June 30, 1864, c. 171, § 14, 13 Stat. 214; Rev. St. § 2931; Westray v. United States, 18 Wall. 322 [21 L. Ed. 763]; Barney, Collector, v. Watson et al., 92 U. S. 449 [23 L. Ed. 730]; Davies v. Arthur, 96 U. S. 148 [24 L. Ed. 758]. No such written notice or protest is required of a party paying illegal taxes under the internal revenue laws. He must pay under protest in some form, it is true, or his payment will be deemed voluntary. City of Philadelphia v. The Collector, 5 Wall. 720 [18 L. Ed. 614]; Collector v. Hubbard, 12 Wall. 1 [20 L. Ed. 272]. But whilst a written protest would in all cases be most convenient, there is no statutory requirements that the protest shall be in writing. In the present case, the court merely finds that the payment of the tax and penalty was made under protest, which may have been either written or verbal. We think that this finding is sufficient to show that the payment was not voluntary. It is apparent from the findings, it is true, that the objection of the parties was particularly made against the legality of the tax, and not against the penalty as distinct therefrom. But, of course, the objection included the penalty as well as the tax; and as the latter was clearly illegal, we think that the plaintiff should have the judgment for the amount thereof, unless barred by the statute of limitations."

This case was followed in Stewart v. Barnes, 153 U. S. 456, 459, 14 Sup. Ct. 849, 850, 38 L. Ed. 781, where the court says:

"No evidence was introduced to show the nature of the protest made, but it was unnecessary to prove more than that the payment was made under 'protest' which was admitted by the plea."

Under the circumstances attending this payment I conclude that it was involuntary, and was accompanied by a sufficient protest.

We come now to the consideration of the main question which is stated by the counsel of the plaintiffs in their brief as follows: Mrs. Wertheim having died before the assessment was made, the duration of her life interest was already fixed, and the assessment made on the basis of her expectancy of life is invalid. The war revenue act (Act June 13, 1898, c. 448, 30 Stat. 465 [U. S. Comp. St. 1901, p. 2308]) § 30, imposes upon an executor or trustee, the duty, within 30 days after any legacy or distributive share has come to

his charge or trust, of giving notice thereof to the collector or deputy collector of the district wherein the deceased last resided. It then provides that he shall pay to the collector or deputy collector of such district, the amount of the duty or tax assessed upon such legacy or distributive share, and shall also make and render to the said collector or deputy collector, a schedule or statement of the amount of such legacy or distributive share, together with the amount of duty which had accrued or should accrue thereon. It also provides that such schedule or statement shall contain the names of each and every person entitled to any beneficial interest therein, together with the clear value of such interest; that the same should be verified by oath, and immediately delivered, and the tax paid thereon to the collector. It is further provided in the same section as follows:

"And in case such executor, administrator, or trustee shall refuse or neglect to pay the aforesaid duty or tax to the collector or deputy collector, as aforesaid, within the time hereinbefore provided, or shall neglect or refuse to deliver to said collector or deputy collector, the duplicate of the schedule, list or statement of such legacies property or personal estate, under oath, as aforesaid, or shall neglect or refuse to deliver the schedule, list, or statement of such legacies, property, or personal estate under oath, as aforesaid, or shall deliver to said collector or deputy collector a false schedule or statement of such legacies, property, or personal estate, or give the names and relationship of the persons entitled to beneficial interests therein untruly, or shall not truly and correctly set forth and state therein the clear value of such beneficial interests, or where no administration upon such property or personal estate shall have been granted or allowed under existing laws, the collector or deputy collector shall make out such lists and valuation as in other cases of neglect or refusal, and shall assess the duty thereon."

The balance of the section is confined to the remedy to be pursued in case of nonpayment of the tax or duty assessed. This section, as a whole, clearly makes it the duty of the executors in the first instance to file a schedule containing the names of each and every person entitled to any beneficiary interest in an estate, together with the clear value of such interest, and the amount of the duty or tax which has accrued or shall accrue thereon. If however, the executor or trustee neglects or refuses to do any of the acts he is required to do, or does them falsely, imperfectly, or incorrectly, the collector or deputy collector is thereupon required to make out such lists and valuations, and assess the duty thereon. A statement and schedule as required by the act was made in this case, and filed with the collector, and it was accompanied by an affidavit which set forth certain property and interests which it was claimed by the executors, were not subject to taxation. The schedule so furnished was not accepted by the Internal Revenue Commissioner, although there was no question raised, apparently, that it was not made in absolute good faith; indeed, the fact that matters which the executors disputed were included in a separate affidavit, thus making a full disclosure in the premises, is ample evidence of good faith. Furthermore, that there was merit in the contention of the executors, and that the same was not urged in a dilatory or captious spirit, is shown by the fact that subsequently their claim was in part allow-

ed, and a corresponding portion of the taxes paid by them refunded. The schedule and return as made and filed by the executors was subsequently and during the summer of 1903 made the subject of frequent discussion between the executors or their counsel, and the department at Washington, and this situation continued until some time in the fall of that year, when the assessment was finally made. It seems to me that the time when the assessment should have been made under the act, or when the tax became a lien, is relatively unimportant in this connection, and that the important consideration is rather the time when it was in fact made. It should be noted here that when the dispute first arose as to the correctness of the return made by the executors, the executors were directed to file a new return. The executors claimed there was no occasion to file a new return until the legal proposition in dispute had been settled. The Commissioner seems to have acquiesced in this to the extent at least of saying that the matter would be taken under advisement. As a matter of fact no new return was ever again required or filed, but the assessment as made by the Commissioner was made upon the schedule and affidavit originally filed by the executors. It plainly appears, also, that no assessment was made until some time after September 8, 1903. On September 2d the plaintiffs' counsel wrote to the Commissioner asking whether anything further by way of proof or brief was required, to which letter they added the statement that it was their understanding that no assessment had yet been made. To this letter of inquiry reply was made on the 8th day of the same month to the effect that no further information was desired, and that action would be taken on the matter in the near future. It is impossible to construe this correspondence as meaning otherwise than that at that time the department was possessed of all the information it desired, or that was necessary to make the assessment; that it had not yet been made, but that it would be made, or the making of it undertaken in the near future, and this construction, moreover, is borne out by the fact that nothing further transpired between the parties until the notice of the assessment of the tax was received, and a demand for its payment made October 28th following.

Recurring now to the fact that the life tenant, whose interest was thus assessed, had died on the 15th day of August preceding, and that both parties were ignorant of that fact when the assessment was made and paid, the question is presented whether such assessment was properly made by the use of life tables. Life tables at the best are uncertain and conjectural evidence. They are used because in many cases they afford the best if not the only means of ascertaining the probable duration of a life or lives. Counsel for the plaintiffs contend that their use is absolutely unwarranted in any case under this act, and cite in support of their position, among other cases, a dictum of the Circuit Court of Appeals of this district, in the case of Herold, Collector, v. John F. Shanley et al., executors (C. C. A.) 146 Fed. 20, but in the view I take of this case, it is unnecessary to decide that question, since they

were here used under circumstances which would have barred their use, even if the act had expressly permitted it. The event which through their use it was calculated would happen some 30 years or more in the future had already transpired. The life estate assessed was ended. Its duration was ascertained. The fact under investigation was determined. Under the circumstances, their use was neither necessary nor proper, and wrought error where absolute certainty otherwise existed. Nor do I perceive why ignorance of the fact that the life was ended excused or justified the assessment after the fact of the death was disclosed. This is not at all the case of an assessment of a life estate regularly made upon the basis of the tables and paid, and after such assessment and payment death ensued sooner than the time estimated by use of the tables. The defendant contends that the interest of the deceased in the estate was subject to the tax from the time of the death of the testator, and that whenever imposed the tax related back to that time. Nevertheless, the clear value of each interest had to be ascertained, and as the interest to be assessed in this case was a life interest, and its value depended upon the duration of a life such duration had to be determined, and it was just here that the mistake was made. It would hardly be pretended in reason, that if the life tenant had died the day after her father, that a tax, the amount of which had been thereafter determined by the use of mortality tables, would be legal even though it be admitted that such tax rightly imposed would relate back to the death of the parent. The duration of life in the case supposed, would have been determined and the value of the life interest ascertained by its known duration. Each interest liable to taxation must be valued independently. Knowlton v. Moore, 178 U. S. 41, 20 Sup. Ct. 747, 44 L. Ed. 969. As already said, life tables are not the best evidence or conclusive evidence, their use is only justified when no better evidence is obtainable. Cases somewhat similar to the one at bar, but arising previously thereto, were brought to the attention of the court by counsel, from which it appeared that the Commissioner of Internal Revenue had in such cases, granted like relief to that sought in this case. But when the facts in this case were brought to his attention for review, his reply was that the cases above referred to were either erroneous or had been overruled, presumably by himself.

The laws of the state of New York (chapter 360, p. 607, Laws 1860) provide that no person having a husband, wife, child or parent, shall by his or her will devise or bequeath to any benevolent, charitable, literary, etc., institution, more than one-half part of his or her estate. In order to determine whether more than one-half part of the estate had been devised contrary to the provisions of that act, it has frequently been necessary to ascertain the value of a life estate where it had not terminated, and the use of life tables in such cases has been permitted, but not, however, in cases where, by reason of death, the duration of the life estate has been actually fixed. In re Stiles Estate (Sur.) 3 N. Y. Supp. 137, the

court, in dealing with the value of the widow's dower right for the purpose mentioned, used this language:

"This should ordinarily be ascertained on the principle of life annuities. This method is resorted to where the time is not actually known, but in this case it appears that the widow lived 6.833 years; so we may adopt that as the number of years' purchase of her annual dower interest."

In re Teed (Sup.) 12 N. Y. Supp. 642, a life beneficiary under the will had died before the final distribution of the estate, and the court said (page 644):

"It was stated there [Hollis v. Seminary, 95 N. Y. 166] in the elaborate opinion of Judge Earle, that the calculation upon which the judgment rested, contained an element of uncertainty as to the duration of the lives of the persons having a life estate. * * * That was a case dealing in uncertainties, in the case before us there is no uncertainty, because the proceeding is for the final distribution of an estate after the death of an annuitant, the length of whose life is accurately known."

And it was further held, in substance, that the case of Hollis v. Seminary, in which the use of life tables was justified, applied only to cases where the life beneficiary was living.

In re Grant's Estate (Sup.) 28 N. Y. Supp. 203, the court said (page 204):

"To ascertain what the personal property was worth at the time of the death of the testator, the value of the life estate in it which succeeded his death must be measured. If it had not terminated when the division was sought, it would have been determined by a certain known method of measurement. This was well illustrated by Judge Earle, in Hollis v. Seminary, 95 N. Y. 166. But as the life estate has ended, there was no occasion to do more than to make it appear what in fact was its value."

These cases only declare what common sense dictates, that where a life estate has been terminated by death, there is not only no necessity for, but no propriety in, the use of life tables. The case of Vanderbilt v. Eidman, 196 U. S. 480, 25 Sup. Ct. 331, 49 L. Ed. 563, makes the liability for taxation depend, not upon the mere vesting in a technical sense of title to the gift, but upon the actual possession and enjoyment thereof. In the case at bar, the actual possession and enjoyment of the life tenant in her estate had ceased before the tax was imposed, and since it was only for the period of such actual possession and enjoyment that it was liable to taxation under the act, the amount it was taxed in excess thereof was clearly illegal.

The case presented is one of mutual mistake brought about by the ignorance of a controlling fact, and it seems to me that law and justice demand that the plaintiffs should be afforded relief. Suppose a life estate were apparently created by a will and the same was duly valued and taxed, and the tax paid by the executors, but later it was discovered that in fact no life estate ever existed for the reason that the supposed life tenant had predeceased the testator; surely, in such a case the executor would not be remediless; nor do I see how, in principle, it differs from the case at bar. Ignorance of fact is a well-recognized ground of relief in all such cases. When the life tenant died, the matter of the assessment was,

under the law, properly in the hands of the Commissioner; he was discharging a duty which the law imposed upon him, and the attendant delay was his, and not the plaintiffs. They paid the tax within a week after they were notified of the assessment. If the matter rested between individuals, the plaintiffs would undeniably have a claim to relief. The well-known principle applicable in such cases is clearly laid down in United States v. Barlow, 132 U. S. 271, 10 Sup. Ct. 77, 33 L. Ed. 346, where Mr. Justice Field, in delivering the opinion of the court says, page 281 of 132 U. S., page 80 of 10 Sup. Ct. (33 L. Ed. 346):

"It is familiar law that an action may be maintained to recover back money paid as the price of articles sold, or of work done, when the articles are not delivered or the work not done. The reason is that the consideration for the payment has failed. It is not perceived that the principle of law sought to be applied in this case is in any essential particular different. If the contract for extra allowance was void by reason of fraud or clear mistake, the action becomes simply one for the return of moneys paid for services of stock and carriers never rendered, but which when payment was made were believed to have been rendered. As in the case of goods not delivered, or work ordered not done, the consideration to the party paying has failed. As said by Baron Parke in Kelly v. Solari, 9 M. & W. 54, 58: 'Where money is paid to another under the influence of a mistake—that is, upon the supposition that a specific fact is true, which would entitle the other to the money, but which fact is untrue, and the money would not have been paid if it had been known to the payer that the fact was untrue—an action will lie to recover it back, and it is against conscience to retain it.' See, also, Townsend v. Crowdy, 8 C. B. (N. S.) 477; Strickland v. Turner, 7 Exch. 208."

It has already been shown that payment made to a public official when made in ignorance of controlling facts, is not voluntary, hence, I see no reason why the principle declared in the above case should not be applicable to this. Payment was made involuntarily and under protest. The tax could have been legally assessed upon Mrs. Wertheim's interest only for the period she lived; for that period, however, it was liable to assessment, and it should be assessed upon the amount which she or her estate actually received. The evidence shows that Mrs. Wertheim, or her estate since her death, received upon her legacy the sum of $491,432.17; she also received under the will, a legacy of furniture valued at $5,000. To the sum of these items should be added $42,081.91, which was the amount of tax paid by the executors, and deducted from Mrs. Wertheim's legacy, thus making the total value of the legacy to Mrs. Wertheim $538,514.08. The rate fixed by the act upon that amount is $1.87½ per $100, and the total amount of tax for which her interest in the estate was liable, therefore, is $10,097.14. This result is obtained upon the theory that the tax in issue was deducted by the executors from Mrs. Wertheim's interest in the residuary estate as required by law, and is, therefore, now to be considered as a part of the same in establishing its clear value. Deducting from $42,081.91 the amount paid by the executors, the sum of $10,097.14 the amount of the tax for the payment of which her interest was taxable, leaves $31,984.77, for which sum, with interest from November 4, 1903, a verdict is given for the plaintiffs. The foregoing figures are, however, subject to adjustment and correction by counsel.